HARTFORD FIRE INS. CO. *v.* J. R. BUCKWALTER LUMBER CO.

[77 South. 798, Division A.]

1. INSURANCE. *Mortgage clause. Oral contract to substitute.*
   An oral contract of renewal of insurance by an agent who has authority to write policies is valid and binding and an oral contract to substitute a mortgage clause in a policy is also good, since the mortgage clause is no more sacred nor formal an instrument than the insurance policy itself.

2. SAME.
   Where there is no clause in the policy providing that an insured must consent to the substitution of a mortgage clause and such substitution would not affect the interest of insured, it is not necessary to obtain the consent of insured to such substitution.

3. INSURANCE. *Oral mortgage clause. Code* 1906, *section* 2596.
   Under Code 1906, section 2596, providing that every fire insurance policy taken out by a mortgagor or grantor in a deed of trust shall have attached a mortgage clause in substantially the form set out in the section, there is no provision prohibiting any oral agreement to issue a mortgage clause, when this oral agreement is made, the statute simply defines what the clause is. To that extent it becomes a statutory insurance policy.

4. SAME.
   No additional consideration is required to be paid as a condition for the insertion of a mortgage clause the consideration paid by the original insurer constitutes a sufficient and valuable consideration for the contract between the insurance company and the mortgagee, since it imposes no increased hazard.

5. INSURANCE. *Validity of policy. Estoppel.*
   Where the general agent of the defendant insurance company, who had authority to do so, stated that a fire policy was effective as to plaintiff's interest, and that he would make out the necessary mortgage clause, he thereby waived the actual writing of the mortgage clause and in such case the insurance company was estopped to make any of these contentions.

6. MORTGAGES. *Extinguishment.*
   If it be the intention of parties in purchasing a prior deed of trust on property, upon which they have some claim to keep the prior mortgage or deed of trust alive, then this intention should govern.

APPEAL from the circuit court of Newton county.
HON. J. D. CARR, Judge.
Suit by J. R. Buckwalter Lumber Company against the Hartford Fire Insurance Company. From a judgment for plaintiff, defendant appeals.
The facts are fully stated in the opinion of the court.

*McLaurin & Arminstead,* for appellant.

It is respectfully submitted that this suit must fail for the reason that no recovery can be had on the first count of the declaration, as no proof was offered to sustain that count; and no recovery can be had on the second count of the declaration, because there was no specific agreement shown in the evidence, on which to bind the insurance company; (appellant here), and further, that there is no allegation in the pleadings, and no fact in the proof, of any payment, or tender of premium, offered to the insurance company to bind it on the alleged agreement set forth in the second count in the declaration.

By reference to Cooley's Briefs on Insurance volume 1, p. 464, it is held that: "In an action for breach of an oral contract to insure, the plaintiff must allege and prove payment or tender of the premium before he can recover, and if an action to recover damages for a breach of a promise to renew a policy, a declaration

which fails to allege that insured left the premium with the insurer's agent, or that, at the expiration of the policy, it was paid or tendered, is demurrable," citing *Croghan* v. *N. Y. Underwriters Agency,* 53 Ga. 109; *Hardwick* v. *State Ins. Co.,* 20 Or. 547, 26 Pac. 840; *Jones* v. *United States,* 96 U. S. 24-28; *The Tornado,* 108 U. S. 342-251; *Mutual Life Ins. Co.* v. *Hill,* 193 U. S. 551-559; *Milling Co.* v. *Langford,* 81 Miss. 728.

In 2 Clements on Fire Insurance, p. 593, Rule 51, it is said: "The burden of proof is on the insured, who alleges the existence of a parol contract, to show by satisfactory evidence that the negotiations were concluded and contract in fact made, by which the parties became mutually bound; and an infallible test is to determine whether both parties are bound, unless the assured is obligated to pay the premium, on a tender of the policy, the company is not to deliver it or to pay the loss, if one occurs. When the insured is not bound to pay the premium, the company cannot be bound to pay the loss." Citing *J. R. Davis Lumber Co.* v. *Scottish Union & N. Ins. Co.,* 94 Wis. 472, 69 N. W. 156; *Waldron* v. *Home Mutual Ins. Co.,* 9 Wash. 534, 38 Pac. 136.

So we say that if there be no consideration alleged or shown for the breach of the alleged contract to put a new mortgage clause on a policy that had become void, there was no binding obligation on the part of the insurance company to do so even according to the appellee's own proof in the court below, and the court erred in allowing any judgment to be rendered against the appellant (defendant below), and should have granted the instruction for the jury to find a verdict for the appellant. These considerations are covered by assignment of errors numbers 18, 19, and 20, filed in this case.

Assignment of errors numbers 21 and 22, we submit, are well taken, also, for the reason that when the J. R. Buckwalter Lumber Company foreclosed its second mortgage on the property covered by the policy and

paid off the mortgage to the Pan-American Life Insurance Company to clear its title it operated to extinguish the debt of the Pan-American Life Insurance Company, otherwise the Buckwalter Lumber Company, owning the title to the property subject to the Pan-American Life Insurance Company's mortgage, by taking the assignment of a mortgage on his own property, would thereby become its own creditor. This could hardly be.

We insist that when Mr. Buckwalter became the owner of the mortgage covering the property, and paid off the prior mortgage, it was the extinguishment of the debt, and he had no right to claim any contract whether void or not, to cover an extinguished debt.

The contentions set forth in the foregoing brief are set up in the assignment of errors and it is respectfully submitted that the trial of this case in the lower court both on the facts and the law was erroneous.

The court will observe that this is not a case where a policy had actually been delivered to an assured, and credit given for the premium by agreement made between the parties at the time; but this suit is for a breach of a contract to attach a mortgage clause to a policy already avoided by its terms, and to impose a liability upon the insurance company without showing any consideration therefor whatever or any benefit passing to the insurance company, for the assumption, of the alleged liability, by breach of the alleged contract, to change mortgagees, on a void policy, without the consent of the assured. Surely there can be no liability under such circumstances.

Where a declaration fails to state a cause of action as in the case at bar, the defect may be reached by a peremptory instruction asked by the defendant at the close of the evidence, and a failure to demur, is not a waiver of the defect. *Southern Ry.* v. *Grace,* 95 Miss. 611-616. All of which is respectfully submitted.

*J. N. Flowers,* for appellee.

Every contention made by counsel might be met if necessary by simply calling to the court's attention the proof made by the plaintiff in the court below to the effect that all the facts about these papers and the *status* of the title to this property were made known to Mr. Cole, the agent of the company, as soon as the papers got into the hands of Buckwalter, and his agent, with all the facts before him, agreed and promised to do the things necessary to protect Buckwalter under this policy.

Buckwalter relied upon this. It is too late now for the defendant, this appellant, to say that the policy had been forfeited and that the agreement should not have been made. But defendant is estopped. Buckwalter relied upon the representations, acted upon them, took no other steps to get insurance, depended absolutely upon what Cole told him. Cole assured him that this particular policy in his hands protected him and that he had done the necessary things to make this policy protect him.

Rules of law applicable. The burden is upon the defendant to prove the breach of a condition subsequent. He must plead it and then prove it. To support this statement of the law it needs only to refer to the extensive note to *Benanti* v. *Delaware Insurance Company* (Conn. 1912), beginning at page 829, of American Annotated Cases, 1913D. The cases listed in that note represent the courts of England, Ireland, Canada, United States, Alabama, Arkansas, California, Colorado, Connecticut, Georgia, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi (*Liverpool & London & Globe Insurance Company* v. *Foxworth Lumber Company,* 72 Miss. 555, 17 So. 445), Missouri, Nebraska, New Jersey, Ohio, Oklahoma, Pennsylvania, South

Carolina, South Dakota, Tennessee, Texas, Virginia, Washington, West Virginia and Wisconsin.

Since this is so nearly unanimous and our own state is included, we will treat this as being a settled rule to be applied in the present case for what it may be worth.

The burden is placed upon the defendant not only as to proof of breaches due to acts committed or conditions arising after the policy issues. The rule also applies when the clause affirming the title of the insured to be not other than unconditional and sole ownership at the time 'the policy issued is depended upon. *Atlas Fire Insurance Company* v. *Malone* (Ark. 1911), American Ann. Cases. 1913B, p. 210, and note, page 212; *Boulden* v. *Phoenix Insurance Company,* 112 Ala. 422, 20 So. 587; *Connecticut Fire Insurance Company* v. *Colorado, etc., Co.* (Colo.), Am. Ann. Cases, 1912C, p. 597; *Insurance Co.* v. *Bonnen,* 57 Miss. 308.

The presence of a mortgage or other lien on the property is not inconsistent with sole and unconditional ownership. *Boulden* v. *Phoenix Fire Insurance Company,* 112 Ala. 422, 20 So. 587; *Atlas Fire Insurance Company* v. *Malone* (Ark.), Am. Ann. Cases, 1913B., p. 210; *Connecticut Fire Insurance Company* v. *Colorado, etc., Co.* (Colo.), Am. Ann. Cases, 1912C, p. 597.

The change of title depended upon to support a forfeiture must be real and effective. A void conveyance is not sufficient. There must be a valid transfer of the title. *West Branch Ins. Co.* v. *Helfenstein,* 40 Pa. 280; *Courtney* v. *N. Y. City Ins. Co.,* 28 Barb. 116; *Folsom* v. *Bellnap, etc., Co.,* 30 N. H. 231; *Orrell* v. *Hampton, etc., Co.,* 13 Gray 431; *Washington Ins. Co.* v. *Hayes,* 17 Ohio St. 423; *Ayers* v. *Home Ins. Co.,* 21 Iowa 185; *Bryon* v. *Traders F. Ins. Co.,* 145 Mass. 389; *Niagara Fire Ins. Co.* v. *Scammon,* 144 Ill. 490, 32 N. E. 914, 19 L. R. A. 114.

A voidable sale by the trustee in a trust deed does not constitute a change of title. *Commercial Union Assur. Co.* v. *Scammon,* 126 Ill. 355, 18 N. E. 562, 9 A. S. R. 607; *Niagara Fire Ins. Co.* v. *Scammon,* 144 Ill. 490, 32 N. E. 914, 36 A. S. R. 432, 19 L. R. A. 114.

In the case last cited the court said: "The right to insist upon a forfeiture under a clause against alienation or change of title is *strictissimi juris,* and such right must be brought clearly within the forfeiting clause, *Aurora F. Ins. Co.* v. *Eddy,* 55 Ill. 213, such a clause is couched in language of the insurance company's own selection and its tendency is to narrow and limit the obligation of the company, and defeat the indemnity which it was the purpose of the assured to obtain. The burden of proof was upon appellant to establish that there had been a change of title that was valid as against the insured. This it did not do. The sale that appears in the record was made without the consent of Scammon, and he expressly repudiated it, and remained in possession of the premises, claiming to be owner. The sale, without a ratification of it by Scammon, was invalid and he never ratified it by acquiescence or otherwise."

The courts are practically agreed that placing a mortgage on property is not an alienation or change of title prohibited by the provision against alienation. *Commercial Ins. Co.* v. *Spankneble,* 52 Ill. 53, 4 Am. Rep. 582; *Hartford Fire Ins. Co.* v. *Walsh,* 54 Ill. 164, 5 Am. Rep. 115; *Jackson* v. *Massachusetts Mut. Fire Ins. Co.,* 23 Pick. (Mass.) 418, 34 Am. Dec. 69, and note; *Loy* v. *Home Insurance Co.,* 24 Minn. 315, 31 Am. Rep. 346; *Byers* v. *Farmers' Insurance Company,* 35 Ohio St. 606, 35 Am. Rep. 623; *Sunfire Office* v. *Clark,* 53 Ohio St. 414, 42 N. E. 248, L. R. A. 562, and note; *Peck* v. *Hirard Fire, etc., Ins. Co.,* 16 Utah 121, 51 Pac. 255, 67 A. S. R. 600 (Deed intended as mortgage); *Hartford Steam-Boiler Inspection, etc.,* v. *Lasher Stocking Company,* 66 Vt.

439, 29 Atl. 629, 44 A. S. R. 859; *Guarrier* v. *Peabody Ins. Co.,* 10 W. Va. 507, 27 Am. Rep. 582.

The burden of the proof rests upon the insurer to prove any facts or conditions depended upon to avoid the policy. *Thompson* v. *Bankers, etc., Ins. Co.* (Minn.), Am. Ann. Cases, 1916A, p. 277.

Forfeiture coming to knowledge of agent is waived and company is estopped to set it up when unearned premium is not returned. *Insurance Co.* v. *Dobbins,* 81 Miss. 623, 33 So. 504; 3 Cooley's Briefs, p. 2463, et seq; 3 Cooley's Briefs, page 2469.

It is respectfully submitted that the appellant has shown no ground for reversal and that the judgment of the lower court should be affirmed.

SYKES, J., delivered the opinion of the court.

Appellee, J. R. Buckwalter Lumber Company, filed suit in the circuit court of Newton county against appellant, Hartford Fire Insurance Company, to recover the sum of seven thousand dollars and interest, upon an insurance policy issued by the appellant, payable to Mrs. J. E. Golden, insuring a hotel building in the town of Union, Newton county, Miss. The policy contains the New York standard mortgage clause, making the loss or damage payable to the Pan-American Life Insurance Company. This mortgage clause is dated and was issued at the same time the policy was written, viz., April 2, 1915, for a period of one year. The property was burned on February 27, 1916. J. E. Golden, Jr., was the owner of the property on the 1st of January, 1913. On that day he executed a deed of trust on this property in favor of the Pan-American Life Insurance Company, to secure an indebtedness of seven thousand dollars. A short time thereafter Golden executed another deed of trust upon the same property to J. R. Buckwalter Lumber Company to secure an indebtedness

due it. At a later period, viz., on May 26, 1913, Golden executed a deed to his wife, conveying to her the property. The policy in suit was issued by J. M. Cole, agent of the appellant company at Union, Miss., and the premium paid therefor was two hundred and ten dollars. Upon its issuance the policy was delivered to the mortgagee, the Pan-American Life Insurance Company. In October, 1915, after Golden had deeded this property, or his title and equity in it, to his wife, Mrs. Golden, there was an attempted foreclosure sale of the same under the second deed of trust, the one of the J. R. Buckwalter Lumber Company, at which sale the appellee lumber company attempted to purchase it, subject, of course, to the prior or first deed of trust. The trustee's deed, after reciting that the trustee offered for sale the property, properly describing it, contains this clause:

"I therefore, as trustee, do hereby transfer, sell, and assign to the said J. R. Buckwalter Lumber Company, a corporation, all of the right, title, and interest of the said J. E. Golden, Jr., in and to said property."

At the time of this attempted trustee's sale, J. E. Golden, Jr., had already parted with whatever title or equity he possessed in the property, by deeding the same to his wife. It is therefore doubtful whether or not the purchaser at this trustee's sale obtained a valid title to the property, subject to the first mortgage. We are not called upon to pass upon this question, however, in this case. There seems to have been no change in the possession of the property after this attempted trustee's sale. On the 6th day of January, 1916, the appellee lumber company purchased the notes and security held by the Pan-American Life Insurance Company, and took a written assignment of the same, for which it paid a consideration of seven thousand, one hundred and eighty-nine dollars and forty-eight cents. When these papers and assignments were delivered to the appellee, the insurance policy in suit was delivered to it

also. This policy was not mentioned in the written assignment, nor was there any written assignment on the policy itself. While the appellee was negotiating for the purchase of the notes and securities held by the Pan-American Life Insurance Company, according to the testimony of its attorney, W. I. Munn, he called to see Mr. Cole, the agent of the insurance company, and explained to him that the appellee was about to purchase these notes and security, and asked him about this insurance. He testified that Mr. Cole told him "to go ahead, and that the insurance was all right, and that, if anything was to be done when the papers got here, he would fix it." Mr. Munn further testified that, as soon as the papers arrived, the insurance policy was turned over to him; that he took it to Mr. Cole, and asked him either to issue a new policy or to attach a mortgage clause in favor of appellee to this policy. Mr. Cole told him it would be too much trouble to issue a new policy, but that he would fix this one by issuing a mortgage clause in favor of the appellee; that it was all right, and that the policy was in force, and to notify the appellee to this effect. It will be noted that at this time the policy had four months to run before its expiration. Mr. J. R. Buckwalter, president of the appellee corporation, also testified that he discussed this insurance matter with Mr. Cole both before and after the fire, and was told by Mr. Cole at both times that the policy was all right and that he knew about the transaction. He also told him after the fire that there would be no trouble about collecting the insurance. Mr. Munn also testified that he explained in detail to Mr. Cole the various transactions relating to the title of this property. Mr. Cole denied having the conversations with Mr. Munn and Mr. Buckwalter. He did not deny, however, that he was familiar with the title to the property. The case was tried upon the second count of the declaration, which, in substance, set up the facts above enumerated.

A plea of the general issue was filed, and notice of certain matters was given by the defendant. It is unnecessary to set up in detail what the notice of defendant and the counternotice of plaintiff contained. A verdict and judgment were rendered in favor of the plaintiff for the amount sued for, from which judgment this appeal is prosecuted.

The appellant contends, first, that it should have been given a peremptory instruction in the lower court. It is contended that one mortgagee cannot be substituted for another on a valid insurance policy without the express consent of the insurance company. The consent of the insurance company in this case was obtained through its general agent, Mr. Cole, who had the right to and did, write policies, mortgage clauses, and renewals. It has several times been decided by this court that an oral contract of renewal by an agent who has authority to write policies is valid and binding. Since an oral contract of renewal is good, then it must follow that an oral contract to substitute a mortgage clause in a policy is perfectly good. The mortgage clause is no more sacred nor formal an instrument than the insurance policy itself.

It is further contended by the appellant that, before this agreement to substitute a mortgage clause could be valid, it would be necessary for the insured, Mrs. Golden, to have assented thereto. No authorities are cited by counsel directly deciding this proposition. The issuance of this mortgage clause would in no way affect any interest of Mrs. Golden, and we see no more reason why she should be consulted about this matter than that she should be consulted about the transfer and assignment of the notes and deed of trust. There is no clause in the policy providing that an insured must consent thereto.

It is contended that there was no contract entered into between the agent of the insurance company, Mr.

Cole, and Mr. Munn, about the issuance of the mortgage clause. The testimony, however, of Mr. Munn, is that the insurance agent agreed to issue a mortgage clause in favor of the appellee, and that he would keep the insurance in force. What this clause is was well understood by both Mr. Munn and the insurance agent. We think the agreement, therefore, was perfectly plain and unambiguous.

It is contended that no oral agreement can be made under the law of this state to attach a mortgage clause to a policy of insurance, for the reason that section 2596, Code of 1906 (section 5060, Hemingway's Code), sets forth the statutory mortgage clause. The meaning of this section is, simply, that this mortgage clause is written by the statute into every policy containing any clause making any of the proceeds of the policy payable to a mortgagee. There is nothing in it prohibiting any oral agreement to issue a mortgage clause. When this oral agreement is made, the statute simply defines what the clause is. To that extent it becomes a statutory insurance policy.

It is next contended that the agreement was void and unenforceable, because there was no consideration passing from the appellee to the insurance company therefor. This contention of appellant is settled adversely to it in the opinion of this court in the case of *Bacot* v. *Insurance Co.,* 96 Miss. 223, 50 So. 729, 25 L. R. A. (N. S.) 1226, Ann. Cas. 1912B, 262, in the following language:

"The consideration paid for the policy by the owner is a continuing consideration, day by day, and is not fully earned until the expiration of the full life of the insurance policy. That this is the case and is so understood by the insurance company is evidenced by the clause in the policy which permits either party to cancel the policy on certain conditions therein named, where-

116 Miss.—53

upon it becomes the duty of the company to refund a certain proportion of the unearned premium. No additional consideration is required to be paid as a condition for the insertion of the mortgage clause in the insurance policy, nor is any additional risk incurred by the insurance company. The consideration paid by the original insurer constitutes a sufficient and valuable consideration for the contract between the insurance company and the mortgagee, since it imposes no increased hazard; nor does it increase the amount of the insurance contract, but merely imposes upon the insurance company the obligation of paying to the mortgagee, in the place of the insured and out of the proceeds of the policy, such sum, not in excess of the face value of the policy, as the interest of the mortgagee, in the identical thing insured, shall amount to."

We also quote from the same opinion as to the effect of section 2596, Code of 1906 (section 5060, Hemingway's Code), with reference to a mortgage clause in a policy of insurance:

"When a mortgage clause is inserted in an insurance policy, its effect is limited and controlled by section 2596 of the Code of 1906, and the rights of the parties are determined by the provisions of the above statute, which antomatically writes itself into every insurance contract where the insurance company allows a mortgage clause to be inserted. . . . The effect of this statute is to make the contract between the insurance company and the mortgagee a new and independent contract, which is not in any way dependent upon or subservient to the conditions of the original policy between the owner and the insurance company. It may be that the original policy was void from its inception; but this fact cannot in any way invalidate the independent contract of insurance between the mortgagee and the insurance company, if the mortgagee have really

a valid and insurable interest in the subject of the insurance. Under section 2596 the mortgagee does not take by assignment from the original owner of the policy, taking only the rights which the original owner has and subject to all the conditions imposed upon the owner; but the very design and purpose of the statute is to place the insurable interest of the mortgagee on a safer basis than it would be if it were subject to be defeated by all the uncertainties accompanying the taking out of insurance by the owner in stating correctly his title, etc., and the many other conditions imposed by the insurance company, the nonobservance of which work a forfeiture of the policy in so far as the owner is concerned.''

It is further contended by the appellant that the insurance policy became void as to Mrs. Golden by virtue of the trustee's sale, and that the mortgage clause therein became void when the Pan-American Life Insurance Company sold its note and deed of trust to the appellee. The policy provided, among other things:

''This entire policy shall be void if  .  .  .  foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or. trust deed, or if any change other than by death of the insured take place in the interest, title or possession of the subject of insurance, whether by legal process or judgment or by voluntary act of the insured or otherwise.''

It is further provided in the policy as follows: ''This policy shall be canceled at any time at the request of the insured, or by the company by giving five days' notice of such cancellation. If this policy shall be canceled as hereinbefore provided, or becomes void or ceases, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the cus-

tomary short rate; except when this policy is canceled
by this company by giving notice, it shall retain only
the *pro rata* premium."

The amount of this insurance policy was seven
thousand dollars. This is less than the amount due
under the mortgage to the Pan-American Life Insurance
Company. Whether or not the policy became void as
to the insured, Mrs. Golden, would make no difference
as long as the mortgagee in the same was the Pan-Ameri-
can Life Insurance Company. Under the above sec-
tion of our Code, it is expressly provided that none of
the above-enumerated things would avoid the mortgage
clause. The policy being perfectly valid as to the in-
terest of the Pan-American Life Insurance Company,
before the transfer took place, the attorney of the ap-
pellee discussed the matter with the agent of the in-
surance company and was told by him that the policy
was all right and that he would keep it effective, pro-
vided the notes and collateral were purchased by the
appellee. In pursuance of this agreement, he made the
same statements that the policy was effective as to the
interest of the appellee, and that he would make out the
necessary mortgage clause. He had the authority to
do this, and waived the actual writing of the mortgage
clause. The insurance company is therefore estopped
to make any of these contentions. *Bacot* v. *Insurance
Co., supra; Insurance Co.* v. *Lumber Co.*, 72 Miss. 555,
17 So. 445; *Insurance Co.* v. *Dobbins*, 81 Miss. 623, 33
So. 504.

It is also contended by the appellant that, by the pur-
chase of the notes and collateral by the appellee, there
was an extinguishment of this debt secured by the first
mortgage on the hotel property, and that, for this reason,
appellee is not a mortgagee. The uncontradicted testi-
mony in the record shows that it was not the intention of
appellee to extinguish this debt or satisfy this first

mortgage. The testimony shows that there was un-
certainty and doubt about whether or not the appellee
acquired title to the property subject to the first mort-
gage; that it was the intention of the appellee to keep
the first mortgage alive. If it be the intention of parties
in purchasing a prior deed of trust on property, upon
which they have some claim, to keep a prior mortgage
or deed of trust alive, then this intention should govern.

"The passing of any consideration, even the due
amount of money from the mortgagor to the mortgagee,
may or may not discharge the mortgage, according to
their intention, and it will not be held to operate as pay-
ment if the parties meant to keep  the security alive
and not to extinguish it." 27 Cyc. 1393.

"'Where a mortgage incumbrancer becomes the own-
er of the legal title, or of the equity of redemption, a
merger will not be held to take place if it be apparent
that it was not the intention of the owner, or if, in the
absence of any intention, the merger would be against
his manifest interest.'" Jones on Mortgages (7 Ed.),
volume 2, section 848.

"Where the purchaser of the equity of redemption
takes an assignment of the mortgage, manifestly intend-
ing that there shall thereby be no merger of estates, a
merger will not result unless the justice and equities
of the case demand it. But where the purchaser simply
pays the mortgage debt without having the mortgage
assigned to him, or otherwise manifesting an intention
to keep it alive, the mortgage will be extinguished." Id.,
section 856a.

It is also argued that the court committed error in
the admission of certain testimony. The admission of
this testimony, however, we do not consider reversible
error, if error at all.

*The case is affirmed.*