[Civil No. 2874. Filed March 31, 1930.]

[286 Pac. 183.]

AMERICAN EAGLE FIRE INSURANCE COMPANY OF NEW YORK, a Corporation, Appellant, v. J. M. McKINNON, Doing Business in Yuma County, Arizona, Under the Firm Name and Style of McKINNON GIN COMPANY, Appellee.

Mr. Glenn Copple and Messrs. Miller & Thornton, for Appellant.

Mr. William H. Westover, for Appellee.

ROSS, J.—Plaintiff McKinnon sues for the value of eight bales of platform cotton destroyed by fire on January 9th, 1929, claiming it was covered by an insurance policy issued to him by defendant insurance company on September 1st, 1927, covering only yard cotton, but which was, it is alleged, by agreement amended on October 14th, 1928, to cover platform cotton also. The yard cotton was all baled cotton in what was known as the cotton yard, 100 feet from · plaintiff's gin, and the platform cotton was the baled cotton on platform within 100 feet of the gin. It is

alleged in the complaint that plaintiff had platform insurance with the Firemen's Fund Insurance Company on and prior to October 14th, 1928, which he canceled on that day at the request of defendant, and that on that day the policy of defendant covering yard cotton "was amended to include all baled cotton ginned by the plaintiff on the platform or elsewhere within one hundred (100) feet of said gin"; that after said amendment plaintiff reported to defendant all cotton ginned by him, including platform cotton, and paid defendant its premiums thereon until the fire on January 9th, 1929; that immediately after the fire defendant was notified and investigated the loss and agreed to pay plaintiff for the destroyed cotton eighteen and one-half cents per pound, or the sum of $660.78. Plaintiff asked judgment for said sum, also statutory damages of fifteen per cent, and reasonable attorneys' fees placed at $250.

The defendant filed a general demurrer to the complaint; also answered admitting plaintiff had its policy insuring baled cotton in the yard 100 feet from gin; also the destruction by fire of cotton sued for, and put in issue by denial all the other averments of the complaint, except that it admitted the fire was reported to it and that it investigated it. The answer also set out in defense of the action certain provisions of the policy, to wit: One describing the cotton insured as being baled cotton in the cotton yard 100 feet from gin; another, the "clear space clause," which provided that there should be kept clear 100 feet intervening between the gin and the cotton yard; and another which provided that the conditions, provisions and agreements written upon or attached to the policy could not be waived unless the waiver was written upon or attached thereto. The answer contained a denial that any demand for payment of loss was ever made before bringing suit.

The demurrer was overruled. The court, sitting without a jury, made written findings of fact and conclusions of law. It was found as a fact that the policy as originally issued covered only yard cotton; that subsequently defendant's agent applied to plaintiff for all his cotton insurance and particularly platform insurance; that plaintiff canceled the platform insurance he then had with another company and requested defendant's agent to cover the same, who told plaintiff such cotton would be covered, and that the policy was on or about October 14th, 1928, modified to cover platform cotton; that defendant's agents investigated the fire and loss and thereafter agreed to settle therefor on the basis of replacement or at eighteen and one-half cents per pound, which plaintiff agreed to accept; and that all the allegations of the complaint were true, which would include a finding that premiums were paid. As conclusions of law it was held defendant was liable for the loss, also damages of fifteen per cent and attorneys' fees in the sum of $250, and judgment was entered accordingly. The appeal is from the judgment and the order overruling the motion for a new trial.

Whether error was committed in overruling the demurrer is the first question presented. The cotton destroyed, and for the value of which this suit is brought, was not covered by the policy as originally written. One condition of the policy was that it would cover no cotton closer than 100 feet to the gin and that the space between the insured cotton and gin should be kept clear. Therein it is provided that these and other conditions cannot be waived or changed except by a writing indorsed on policy or attached thereto. The complaint fails to show any such writing. If this requirement is one that cannot be ignored or waived by a later agreement between the contracting parties, or except in the manner stated, then the complaint was vulnerable and

the demurrer should have been sustained. The rule with reference to written contracts generally is that the parties by subsequent oral agreement may modify, alter or change their terms. *Westchester Fire Ins. Co.* v. *Earle,* 33 Mich. 143. In the annotation to *Massachusetts Bonding & Insurance Co.* v. *Vance,* 15 A. L. R. 981, loc. cit. 996 (74 Okl. 261, 180 Pac. 693), it is said:

"So far as the law is concerned, however, an insurance contract does not differ from other contracts; and if the minds of the parties have met in regard to the essential parts of the agreement, it does not matter whether the form of the contract is written or oral; and the power to make completed oral contracts of insurance, as well as agreements to insure, is now sustained by practically all of the cases, in the absence of charter or statutory regulations forbidding them."

The rule as affecting insurance contracts is stated in 32 Corpus Juris, 1113, section 209, as follows:

"In the absence of a statute or other positive regulation to the contrary, a contract of insurance can be made by parol. The fact that contracts of insurance are not usually made in this way is not evidence that they cannot be so made. There is nothing in the nature of insurance which requires written evidence of the contract. The contract may be verbal or in writing, or partly in writing and partly verbal. It is, of course, essential to the existence of an oral, as well as a written, contract of insurance that the minds of the parties shall have met on all the essential terms of the contract; but, where the minds of the parties for a valuable consideration have met on all the terms of the contract, it is complete and enforceable, although it was intended by the parties to be evidenced by a policy which, because of some fortuity, was not delivered before the death of insured."

No reason is apparent why the above rule should not be given full force in this state. If an oral contract of insurance is valid, an oral change or altera-

tion of a written insurance contract when founded on a sufficient consideration is also valid. The following are authority that a policy of insurance may be modified by oral agreement: 2 Cooley's Briefs on Insurance, 2d ed., p. 1491; *Norris* v. *China Traders' Ins. Co.*, 52 Wash. 554, 100 Pac. 1025; *Ludwig* v. *Jersey City Ins. Co.*, 48 N. Y. 379, 8 Am. Rep. 556; *Canfield* v. *Newman*, (Tex. Civ. App.) 265 S. W. 1052; *Offutt* v. *National Fire Ins. Co. of Hartford, Conn.*, (Mo. App.) 273 S. W. 161; *Hartford Fire Ins. Co.* v. *J. R. Buckwalter Lumber Co.*, 116 Miss. 822, 77 South. 798.

But it is said because the statute, paragraph 3440 of the Civil Code of 1913 (section 1826, Revised Code of 1928), prescribes the "New York Standard" form of policy, and prohibits any other, the parties thereto cannot change or alter it. It must be remembered that even though the law requires the parties when making a contract of insurance to use the standard form, still the contract derives its force from the consent of the parties to it (*Ebner* v. *Ohio State Life Ins. Co.*, 69 Ind. App. 32, 121 N. E. 315), and that being true the contract may be amended or changed, provided such amendment or change is not in contravention of the statutes prescribing the standard form of insurance contract. 32 C. J. 1122, § 222. The force of the amendment or change in the contract was to extend its terms so that it would insure all of plaintiff's cotton, that both in the yard and on the platform, whereas before it covered only that in the yard. There is nothing in the statute prohibiting this. The policy, of course, might have been originally written to cover all of plaintiff's cotton.

We are of the opinion that the complaint stated a cause of action and that the demurrer was properly overruled.

Error is alleged in the introduction of oral evidence, over objection, "to show any change or alteration of

any kind in the written policy of insurance pleaded and introduced in evidence." Having decided that the change or alteration referred to was permissible and authorized under the law, it follows that oral evidence in support thereof was properly admitted.

It is next contended that there is no evidence tending to support the findings of fact and that the findings are contrary to the evidence. As to what took place and why in effecting the cancellation of the platform insurance plaintiff had with the Firemen's Fund Insurance Company, and in negotiations for coverage thereof by the defendant, the witnesses are not in agreement. Accepting, however, the court's findings of fact as true, which we must do upon conflicting evidence, there still exists a doubt as to whether the minds of the parties ever met so as to form a contract the performance of which could have been specifically enforced. The policy before and after amendment was an open one as to duration, premium, rate and amount. The face of the policy does not state the rate of premium; it does recite that "in consideration of an increase in rate of thirty-three and one-third (33⅓) per cent., the premium may be computed on a *pro rata* earned basis." It appears that after October 14, 1928, plaintiff made daily reports to defendant's agent of all his baled cotton, both platform and yard, and at the end of each month (perhaps) a recapitulation of these. The agent admitted he used such reports as a basis and billed plaintiff monthly for amount of premiums due thereon. It is undisputed that these bills were paid by plaintiff. What the rate for either platform or yard cotton was, or how it was determined, is not shown by either the policy or the evidence. It is necessary to a valid policy that it should specify the amount covered, the rate and premium, or contain data from which these may be determined. Where the amount is determined from daily totals, the premiums may be ascertained

if the rate is fixed; if no rate is fixed, it would be impossible to determine the premium. But this contract has been completely executed so far as the plaintiff is concerned. He has paid the premiums figured at a rate satisfactory to defendant at the time.

Defendant's agent testified that the rate for platform was higher than for yard insurance, but how much higher is not stated. He also says his computations were based upon the yard rate as "the report was made, presumably, on cotton in yard—so many bales in the yard at the end of the day." It may be defendant accepted premiums honestly believing that only yard cotton was being reported to it by plaintiff and that it would not have accepted them if it had known they covered platform cotton also. On the other hand, it should be assumed plaintiff reported all his baled cotton, platform and yard, and paid the premium demanded of him believing that he had fully discharged his contractual obligation. If the contract was executory, this seeming lack of mutuality might be taken into account, but, as above stated, it was fully executed by plaintiff as he understood it. The court found that plaintiff canceled platform insurance with another insurer at defendant's request and immediately secured a promise from defendant to cover the same. If now it should be held that there was no meeting of the minds as to the rate of premium to be paid for platform insurance and therefore no contract, plaintiff's reliance on defendant's promise to insure him would be rather expensive. Again, under the evidence plaintiff unquestionably paid platform insurance and defendant has not offered to return such payments, or to credit them and ask for balance. We think, in view of these facts and circumstances, defendant is estopped from denying that the premiums paid by plaintiff and accepted by it were not the agreed premiums.

Defendant contends that under the facts of the case the law providing for penalties and attorneys' fees for delay in paying insurance has no application. It is said the right to include these in the judgment depends upon a failure to pay "within the time specified in the policy, after demand made therefor," and since there is no proof of demand it was error to include penalty and attorney fees in the judgment. Paragraph 3441 of the Civil Code of 1913 (section 1828, Rev. Code 1928) uses the quoted language. In the policy is a provision that "the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss." There is no question of defendant's failure to pay within the sixty days after proof of loss and an estimate of the amount thereof, nor is there any evidence that plaintiff thereafter made formal demand. From the date of the loss, January 9, 1929, according to the evidence, up to about April 1st, the defendant was in apparent good faith considering an amicable settlement of plaintiff's loss. The court's finding is that defendant had agreed to pay such loss estimated at $660.78. About the 1st of April the defendant's general adjuster wrote the company's local agent denying any liability on the policy. Thereafter the suit was brought. We think an unconditional denial of liability, whether such denial be before or after the sixty days stipulated, dispenses with the demand. The evident purpose of requiring a demand is for the protection of the insurer who has not refused to accept liability. It would be useless to demand payment of an insurer who has denied any liability. *Phoenix Ins. Co. of Hartford* v. *Fleenor,* 104 Ark. 119, 148 S. W. 650, has construed a similar statute as not requiring a demand where liability is denied. See, also, *Metropolitan Life Ins. Co.* v. *Shane,* 98 Ark. 132, 135 S. W. 836; *New York Underwriters' Fire*

*Ins. Co.* v. *Malham & Co.,* (C. C. A.) 25 Fed. (2d) 415.

Defendant cites *American National Ins. Co.* v. *Brantley,* 38 Ga. App. 505, 144 S. E. 332, as supporting its contention that a demand is a prerequisite to the right of allowance of penalties and attorneys' fees. The statute construed in that case does not appear to be the same as ours, and the facts were widely different; there being no evidence in that case of a denial of liability.

The judgment is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.