**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Plaintiff,**

v.

**David B. DEAN, Diane Dean Simmons, Mark C. Simmons, Ada Willy Hodgson, Arthur Joseph Hodgson, Southern Farm Bureau Casualty Insurance Company and Safeco Insurance Company of America, Defendants.**

**No. FS–69–C–79.**

United States District Court,
W. D. Arkansas,
Fort Smith Division.

Jan. 29, 1970.

Shaw, Jones & Shaw, Ft. Smith, Ark., for plaintiff.

Estes & Storey, Fayetteville, Ark., for defendants Hodgson.

Warner, Warner, Ragon & Smith, Ft. Smith, Ark., for defendant Safeco Ins. Co.

Little & Lawrence, Bentonville, Ark., for defendant Southern Farm Bureau Casualty Ins. Co.

Jones & Butt, Fayetteville, Ark., for defendants Mark and Diane Simmons.

Dow, Cogburn & Friedman, Houston, Tex., Hardin, Barton, Jesson & Dawson, Ft. Smith, Ark., for defendant David B. Dean.

## OPINION

JOHN E. MILLER, Senior District Judge (sitting by designation).

This is a declaratory judgment action filed pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, by St. Paul Fire & Marine Insurance Company seeking a declaration that an automobile liability policy issued by St. Paul to defendant David B. Dean provides no coverage to defendant Mark C. Simmons. Plaintiff has filed a motion for summary judgment on its complaint, and Mark and Diane Dean Simmons have moved for summary judgment on their counter-

claim, and the latter motion has been adopted by David B. Dean.

Plaintiff has presented a real and justiciable controversy within the intent of the Declaratory Judgment Act, between citizens of different states. Plaintiff is incorporated under the laws of Minnesota and maintains its principal place of business in that state. David B. Dean is a citizen and resident of Texas. Defendants Mark C. Simmons, Diane Dean Simmons, Ada Willy Hodgson and Arthur Joseph Hodgson are citizens and residents of Arkansas. Defendant Southern Farm Bureau Casualty Insurance Company is incorporated under the laws of Mississippi and maintains its principal place of business in that state. Defendant Safeco Insurance Company of America is incorporated under the laws of Washington and maintains its principal place of business in that state.[1] The amount in controversy exceeds the sum of $10,000, exclusive of interest and costs.

■ Because of the lapse of time since the casualty in which Ada and Arthur Hodgson were injured and because of other unusual circumstances, rendition of a declaratory judgment is deemed appropriate and discretion to do so will be exercised by the court. Fed. R.Civ.P. 57; 28 U.S.C. § 2201. The following shall constitute the findings of fact and conclusions of law of the court, as contemplated by Rule 52(a) of the Federal Rules of Civil Procedure.

■ Under any rational choice of law theory, the substantive law of Texas must be applied to the facts.

Plaintiff issued its automobiile liability policy to David B. Dean on October 24, 1964. The insurance contract originally covered Dean's 1964 Continental, but an endorsement was added on April 23, 1965, to provide coverage for Dean's 1965 Ford Thunderbird. The Thunderbird was purchased for the use and benefit of Dean's daughter, Diane, who was then a student at the University of Arkansas. On September 26, 1965, Mark Simmons, who was then also a student at the University of Arkansas, was driving the Thunderbird with the permission of Diane Dean Simmons[2] when he collided with a 1964 Chrysler owned and occupied by Ada Hodgson and driven by Arthur Hodgson. As a result of the accident, the Hodgsons are plaintiffs in an action filed in the Circuit Court of Washington County, Arkansas, against Mark Simmons, Southern Farm and Safeco, which has been pending for more than three years. The parties by agreement made the proceedings in the Circuit Court action part of the record here.

St. Paul's controversy with Mark Simmons arose when Simmons formally made demand that St. Paul defend the state court action and pay any adverse judgment up to and including the limits of liability contained in the policy issued to David B. Dean. Plaintiff filed the present action on August 1, 1969, and

---

1. The plaintiff included all of the above named defendants in its complaint for declaratory judgment as well as in the motion of summary judgment. None of the named defendants objected to the jurisdiction of the court except the defendant David B. Dean, the father of Diane Simmons, nee Dean. In his answer he objected to the jurisdiction of the court and asked that the service of process against him be quashed. Service of process was issued and served on him in accordance with Ark.Stat.Ann., § 27–342.1 (1967 Supp.) and is valid, but in the opinion of the court David B. Dean is not a necessary party. The con-

troversy is between plaintiff, Mark C. Simmons, and probably Mr. and Mrs. Hodgson. See, Maryland Cas. Co. v. Pacific Coal & Oil Co., (1941) 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826. The defendants Southern Farm and Safeco are in dispute as to their respective liability to the Hodgsons in the event the court should hold that Mark C. Simmons, the driver of the Thunderbird, was an uninsured motorist at the time of the collision.

2. Mark C. Simmons and Diane Dean married sometime after the collision and before the commencement of this suit.

contends that Simmons is not an insured under its contract with Dean because the policy was orally modified prior to September 26, 1965, with the result that no coverage was afforded to any student other than Diane Dean Simmons and, alternatively, because Simmons was not using the automobile at the time of the collision with the express or implied permission of Dean or his wife.

All of the defendants contend that Simmons is an insured under the policy issued by plaintiff to Dean. Southern Farm, Mark and Diane Dean Simmons, and Ada and Arthur Hodgson have accordingly filed counterclaims [3] against plaintiff seeking declaratory relief. Safeco has crossclaimed against all other defendants and, in the event the court declares Simmons is uninsured under Dean's contract with St. Paul, seeks a declaration that it has no responsibility or obligation under the uninsured motorist provisions of its policy issued to Arthur Hodgson.

It is conceded that coverage under the omnibus clause of the policy as originally written extended to any person using either automobile with the permission of Dean or his wife.[4] On the day Dean purchased the Thunderbird for Diane's use, he notified the independent insurance agent who wrote the policy and informed him that Diane would take the automobile to the University and continue to use it there. The agent informed Dean that it would be necessary to place a student restriction on the insurance contract whereby no student, other than Diane, would be afforded coverage. Dean expressed dissatisfaction with the restriction, but nonetheless cautioned Diane that there would be no insurance coverage if she permitted other students to drive the automobile. Shortly thereafter, the agent mailed a form to Dean for his signature acknowledging the restriction, but Dean never signed or returned it, and it is conceded that if the contract was modified prior to the collision to include the student restriction, the modification was by oral agreement.

It is in fact quite clear that the insurance agent considered the student restriction effective from April 23, 1965, and further assumed that Dean was in complete agreement. In September of 1965, before Diane drove the automobile back to the University for the fall semester, Dean again called the agent regarding the restriction, and the agent again explained that its only effect was to eliminate coverage of students other

---

3. Only Mark and Diane Dean Simmons chose to style their pleading a counterclaim, but Southern Farm and the Hodgsons seek identical affirmative relief against plaintiff.

4. Under coverages A and B, the policy provided:
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
"A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury' obtained by any person;
"B. injury to or destruction of property, including loss of use thereof, hereinafter called 'property damage';
arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient."
Under "Persons Insured" the policy provided:
"The following are insureds under Part 1:
"(a) with respect to the owned automobile,
"(1) the named insured and any resident of the same household,
"(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and
* * *."
Under "Definitions" the "named insured" is defined as "the individual named in Item 1 of the declarations and also includes his spouse, if a resident of the same household."

than Diane. The agent specifically told Diane not to let other students use the Thunderbird because there would be no insurance coverage. Dean admits that he acknowledged to the insurance agent that he understood the effect of the restriction, and his testimony by depositions and his answers to plaintiff's requests for admission of facts filed in this cause make it clear that he was fully aware of the meaning of the limitation. At no point has Dean specifically or by implication denied that the restriction was in effect beginning in April of 1965. It is conceded that he preferred broader coverage and made inquiries among his friends in an effort to determine whether other insurance could be obtained providing coverage to other students, but the evidence is overwhelming that, in spite of his dissatisfaction, he assumed the student restriction was effective from April of 1965. It is, however, unnecessary for the court to determine whether there was a meeting of the minds between Dean and the insurance agent, because there was no consideration for any attempted oral modification of the contract.

■ The rule generally and in Texas is that consideration is necessary for a valid modification of the coverage provisions of an insurance policy, whether the effect of the modification is to extend or limit the risks against which the contract affords protection. Southern Farm Bureau Casualty Ins. Co. v. United States, (8 Cir. 1968) 395 F.2d 176, 180–181; Wackerle v. Pacific Employers Ins. Co., (8 Cir. 1955) 219 F.2d 1, 52 A. L.R.2d 814, cert. den. 349 U.S. 955, 75 S.Ct. 884, 99 L.Ed. 1279; Maryland Casualty Co. v. First National Bank of Atlanta, Tex., (5 Cir. 1936) 82 F.2d 465; United States v. National Insurance Underwriters, (D.Minn.1967) 266 F.Supp. 636, 638–639; Massachusetts Bonding & Ins. Co. v. Florence, (Tex.Civ.App.1919) 216 S.W. 471; Rice v. Provident Life & Accident Ins. Co., (1937) 231 Mo.App. 560, 102 S.W.2d 147; Isadore v. Washington Fire & Marine Ins. Co., (La. App.1954) 75 So.2d 247; American Eagle Fire Ins. Co. of New York v. McKinnon, (1930) 36 Ariz. 409, 286 P. 183.

It is undisputed that the premium charged by plaintiff for automobile liability insurance is unaffected by the fact that a student restriction is added to or removed from a policy, and Dean received no premium refund. A few cases have held that, where the insurance policy expressly reserves the right of the company to cancel upon certain notice, the forbearance of that right constitutes sufficient consideration for a limiting endorsement, *if* the intent to cancel is clearly communicated to the insured. Massachusetts Bonding & Ins. Co. v. Florence, supra; Federal Life & Casualty Co. v. Robinson, (1937) 28 Ala.App. 1, 178 So. 549, aff'd (1938) 235 Ala. 308, 178 So. 551. In *Florence*, an early Texas decision, the insured issued a health policy to Florence upon his representation that, among other things, he was not then and never had been afflicted with hernia. The policy provided that the insurer might cancel at any time upon written notice to the insured. After issuing the policy, the company learned that the insured did have hernia and threatened to cancel the policy unless the insured waived his right to recover thereunder for illness he might suffer from rupture or hernia. Florence promptly released the company from all such liability, and the Texas Court of Civil Appeals held the consideration for the release was the insurer's forbearance of its right to cancel. In *Florence* the insurer clearly advised the insured of his alternatives, and the waiver by the company of its right to cancel was consideration bargained for by the insured.

■ Here, however, the court is faced with a situation entirely different. Dean and the insurance agent never discussed plaintiff's right to cancel the policy if the student restriction was refused. The reported cases are unanimous in holding that where the premium has not been reduced and the intent to cancel is uncommunicated to the insured, forbearance to cancel cannot be consid-

ered adequate consideration. Southern Farm Bureau Casualty Ins. Co. v. United States, supra; Wackerle v. Pacific Employers Ins. Co., supra; Maryland Casualty Co. v. First National Bank of Atlanta, Tex., supra; United States v. National Insurance Underwriters, supra, and cases cited therein at 266 F.Supp. 639. In *Maryland Casualty*, an appeal from the Eastern District of Texas, a local bank, through an innocent misrepresentation, accepted a rider reducing the coverage of its burglary and robbery insurance. The insurer never indicated to its agent that it would cancel the policy if the rider were not accepted, and the agent never discussed the matter with the bank, and there was no reduction in the premium. The bank sustained losses in an amount greater than the recently reduced coverage and, in the ensuing suit on the policy, the insurer contended that there was consideration for the rider in that the company could have, but did not, cancel the policy on thirty days' notice. In affirming the trial court, the Court of Appeals for the Fifth Circuit stated at 82 F.2d 467:

"We think the District Judge was right in holding that there was no consideration for attaching the rider. Nothing was said to appellee about canceling the policy. After the rider was executed, the privilege of cancellation still remained. Nothing whatever was offered or given to appellee to induce the change.

  \*  \*  \*  \*  \*\*  \*

"We think it plain that there was no consideration and that the rider fails as an agreement. 13' Corpus Juris, 592; Titus v. Whiteside (D.C.) 228 F. 695; Stone v. Morrison & Powers (Tex.Com.App.) 298 S.W. 538; Bassi v. Springfield Fire & Marine Ins. Co., 57 Cal.App. 707, 208 P. 154; Maine Street & A. P. R. Co. v. Los Angeles Traction Co., 129 Cal. 301, 61 P. 937, 938."

▮ The decision in *Maryland Casualty* is persuasive in consideration of the undisputed facts in the instant mat-

ter. It is simply not inferable from Massachusetts Bonding & Ins. Co. v. Florence that the Texas Court of Civil Appeals would reach a different conclusion based on the facts here. Moreover, this court will not be the first to hold that an insurer may reduce the coverage of its insured without reducing the premium or indicating its intent to cancel and then successfully allege consideration after-the-fact when a loss has occurred. The court holds that the student restriction was not in force and effect on the date of the accident.

▮ Having resolved the question whether David B. Dean or his wife had the right under the contract of insurance with plaintiff to grant express or implied permission to Mark Simmons to use the automobile, the court must decide whether such permission was actually granted. It is conceded that neither Dean nor his wife ever expressly and specifically told Diane that she might allow other students to use the Thunderbird, and it is settled law that the named insured's mere permission to another to use the automobile does not of itself authorize the permittee to delegate his right of use to a third person so as to bring the latter within the coverage of an omnibus clause. Gillen v. Globe Indemnity Co., (8 Cir. 1967) 377 F.2d 328; Phoenix Insurance Co. v. Allstate Insurance Co., (Tex.Civ.App.1967) 412 S.W.2d 331, 335; 7 Appleman, Insurance Law & Practice, § 4361, pp. 284–288; 7 Am.Jur.2d, Automobile Insurance, § 116, p. 431. It is, however, equally well established that the named insured's grant of authority to the original permittee to allow others to use the automobile need not be express but may be implied from the attending circumstances and the conduct of the parties. Phoenix Insurance Co. v. Allstate Insurance Co., supra; 7 Appleman, Insurance Law & Practice, § 4365, pp. 300–308; 7 Am.Jur.2d, Automobile Insurance, §§ 116–117. And implied permission by the named insured, if established, is as effective to extend the coverage of the omnibus clause as that which is formally

granted. United Services Automobile Association v. Russom, (5 Cir. 1957) 241 F.2d 296, 300.

Before Diane returned to school in April of 1965, Dean instructed her that she should not allow other students to use the Thunderbird because there would be no insurance coverage. Diane immediately informed both parents that she could not refuse to let her friends drive the automobile, whereupon Dean again cautioned her that there would be no coverage. Dean denies that he ever expressly and specifically instructed Diane not to let other students use the car. Diane drove the car back to school the next day and was accompanied by two friends who shared the driving, with the knowledge of Dean and his wife. A friend also shared the driving when Diane returned to the University in September of 1965, again with the knowledge of Mr. and Mrs. Dean. On neither occasion did either parent tell Diane or her friends that Diane alone should drive. Moreover, Diane had unrestricted personal use of the automobile while she attended college, and Dean fully believed that she would allow other students to drive it regardless of the strength of any warning given her. Mrs. Dean visited Diane on several occasions at the University and was aware that her daughter's friends used the automobile. During one of Mrs. Dean's visits, Diane's roommate borrowed the car to pick up an item at a store. During another visit in a period of bad weather, friends of Diane would drive her to class in the Thunderbird and then drive it back to the residence hall.

■ It is thus quite clear that the Deans were forewarned by Diane that she would allow other students the use of the automobile, that they were aware of specific examples of such use, and that they reasonably anticipated that other students would use the automobile in the future. By continuing to allow Diane to use the car under those circumstances, they impliedly consented to its use by other students. Gillen v. Globe Indemnity Company, supra, at 377 F.2d 332; State Farm Mutual Automobile Ins. Co. v. Williamson, (9 Cir. 1964) 331 F.2d 517, 520; Brooks v. Delta Fire & Cas. Co., (La.App.1955) 82 So.2d 55. Mark Simmons was, therefore, driving the car with the permission of the Deans at the time of the accident.

■ An additional ground for the court's holding is the undisputed fact that, at the time of the accident, Mark Simmons was using the automobile for Diane's direct benefit. Simmons had taken the car, as a favor to Diane and with her knowledge and consent, in order to have it washed and cleaned, and was returning the automobile to her when the collision occurred. The general rule, which has been recognized and adopted in Texas, is that a second permittee, who uses the automobile for or in behalf of the original permittee, will be afforded protection under an omnibus clause, for the reason that a named insured's permission to another to use the automobile includes by implication its use by a third person for the purpose, benefit or advantage of the original permittee. Phoenix Insurance Co. v. Allstate Insurance Co., supra. See also Gillen v. Globe Indemnity Co., supra; National Farmers Union Property & Casualty Co. v. Lukins, (8 Cir. 1964) 329 F.2d 564; Allstate Ins. Co. v. Mathis, (1960) 232 Ark. 484, 339 S.W.2d 132; Pollard v. Safeco Ins. Co., (1963) 52 Tenn.App. 583, 376 S.W.2d 730; 7 Am.Jur.2d, Automobile Insurance, § 117, p. 435. It seems only logical that the Deans, in allowing Diane to use the automobile while attending college in another state, could reasonably foresee that in the normal course of the car's daily use, some washing and cleaning and other normal maintenance were to be expected, which might require driving by third persons. However, it is usually held that operation by a third person for the benefit of the original permittee falls within the protection of the omnibus clause even where such operation is specifically forbidden by the named insured. Gillen v. Globe Indem-

nity Co., supra; National Farmers U. P. & C. Co. v. State Farm Mut. Auto. Ins. Co., (D.Mont.1967) 277 F.Supp. 542, 550; Brooks v. Delta Fire & Cas. Co., supra; Baesler v. Globe Indemnity Co., (1960) 33 N.J. 148, 162 A.2d 854, 857 (recognizing the rule). In any event, it cannot be assumed that words of caution given Diane were intended to apply where the driving of the car was in connection with a normal and expected operation incident to its general daily use.

▮ It must also be kept in mind that the omnibus clause in an insurance policy is for the benefit of the public as well as the insured. The approach commonly and justifiably taken in these matters is that the coverage of automobile liability policies is to be liberally interpreted to effect a purpose of the issuance of such policies, namely to provide indemnity to those who may suffer bodily injury, death or property damage by the negligent operation of motor vehicles.

The pleadings, depositions and admissions on file reveal that there is no genuine issue as to any material fact in this cause,[5] and defendants Mark and Diane Dean Simmons are entitled to a declaratory judgment as a matter of law.

Therefore, plaintiff's motion for summary judgment on its complaint will be denied; the motion of Mark and Diane Dean Simmons for summary judgment on their counterclaim will be granted; plaintiff will be required to defend the action filed against Mark C. Simmons by Ada and Arthur Hodgson in the Circuit Court of Washington County, Arkansas, arising out of the accident of September 26, 1965, and to pay any judgment rendered against him in that action up to and including the limits of liability contained in the insurance policy issued by plaintiff to David B. Dean.

Judgment conforming to the above is being entered today and adjudging costs against plaintiff that have accrued in this action.

5. The crossclaim of Safeco is rendered moot by the decision of the court.