[Civil No. 1168.  Filed March 27, 1911.]

[114 Pac. 968.]

ANNA M. McCORD, Plaintiff and Appellant, v. MARY EMMA McCORD, Defendant and Appellee.

1. MARRIAGE—DECREE—EVIDENCE OF DIVORCE.—In a suit for a community interest in property claimed by plaintiff as surviving widow, in which she attacked decedent's marriage to defendant on the ground that the first marriage to plaintiff had never been dissolved, evidence examined, and *held* to sustain a judgment for defendant, because of plaintiff's failure to overcome the presumption of divorce.

2. SAME—EVIDENCE OF DIVORCE—SUFFICIENCY.—Though a party is not required to make plenary proof of the nonexistence of a divorce, he must introduce such evidence as, in the absence of counter-testimony, will afford reasonable grounds for presuming that such negative averment is true.

3. APPEAL AND ERROR—REVIEW—QUESTIONS OF FACT.—The appellate court will not consider the weight of the evidence when there is any substantial evidence to support the verdict or the judgment.

APPEAL from a judgment of the District Court of the Third Judicial District, in and for Maricopa County. Edward Kent, Judge. Affirmed.

### STATEMENT BY THE COURT.

This action was commenced by the appellant, Anna M. McCord, in December, 1909, in the district court of Maricopa

county, against Mary Emma McCord, the appellee, to recover a community interest in certain property in Phoenix, Arizona, which the appellant claimed as the surviving widow of Myron H. McCord, who died in April, 1908. The case was tried to the court without a jury. From a judgment for the defendant, and the denial of a motion for a new trial, an appeal has been taken to this court. The assignment of error alleges that the court erred in rendering judgment for defendant and appellee, and against plaintiff and appellant, and in denying plaintiff's motion for a new trial, for the reason that the evidence in the said cause does not sustain the order for judgment, nor the said judgment.

It appears from the record that the appellant and McCord were married in 1861, and, after their marriage, lived in Shawano, Wisconsin, until 1875. There were five children the issue of such marriage. In 1875 they moved to the town of Jennie, Wisconsin (now the city of Merrill), about eighty miles distant from Shawano, and lived there together until the summer of 1876, when appellant and the children returned to their former home in Shawano on a visit. McCord was absent from the town of Jennie some considerable time during that summer, the evidence does not disclose exactly how long, or to what place or places he went other than one trip to Cincinnati, Ohio. Some six weeks after her return to Shawano, the appellant received a paper from some place in Utah containing a summons in a divorce suit brought against her by her husband. About two weeks thereafter she went back to Jennie, taking with her two of the older children, to see McCord about the divorce, "and see what he was going to do." She met McCord at Wausau, a town between Shawano and Jennie. He was driving a team of his own, and took one of the children with him, but refused to take Mrs. McCord. She followed the next day, going in the stage from Wausau to Jennie. She found the house they had formerly occupied locked. She put the little girl in through the window, unfastened the door from the inside, and entered the house. Soon after their entry into the house, McCord, who was editing a newspaper at that time in Jennie, came to the house. They had a conference. Mrs. McCord states that she does not remember their conversation. She says that he threw a paper

into her lap, saying it was a divorce paper, and told her he was going to marry another woman. Her son, who was then a boy of eleven years of age, testified that his father and mother went into the parlor and talked awhile. He does not know what their conversation was; that his mother was crying when she came out. Mrs. McCord, taking the furniture with her, moved back, with the children, to Shawano. McCord did not accompany them. From that time until the death of McCord, they continued to live separate and apart, she at the town of Shawano, and he at Jennie, afterward called Merrill, Wisconsin, until 1893, when he removed to Arizona, and lived in this territory until his death. It further appears that a couple of months after the separation McCord was at Oshkosh, Wisconsin, and appellant went there to see what provision he was going to make for her support and that of the children. He returned with her to Shawano, and deeded to her a dwelling-house, store building, and other property in Shawano, and some land near there, apparently all the property that he then had except his newspaper plant in Merrill. They never afterward resumed their marital relations.

In August, 1877, McCord was married at Jennie to Sarah E. Space, a resident of that town. This appears to have been a public marriage, in the presence of a large concourse of friends, and an extended notice thereof appeared in the paper published in that place. Two years thereafter his son Charles took up his residence with McCord and his second wife, helping his father about the printing office, and at times attended school until he was fully grown, and then worked for his father in the lumber business, in which McCord afterward engaged. His daughter Florence, about 1879, also visited the father and second wife quite frequently, and for some time made her home with them and taught school in Merrill. About 1879 they adopted a child named Guy McCord, then about two years old, who lived with them continuously until he attained his majority. In 1888, when McCord was a candidate for Congress, the appellant learned that McCord's political opponents wished to interview her in regard to her relations with McCord. She then agreed that if he would leave her free of debt, and would free the store building, she would not say or do anything that might injure him in the

campaign. McCord thereupon gave her his note for $3,000. She says: "It was to keep me from saying anything at that time. I got it to keep still. It was when he ran for Congress about twelve years after we had separated, and from that time on until he died I never did say anything. I heard that he was then married; that he was publicly married and was then living with his second wife." McCord was quite prominent in business and politics at that time. His second wife was recognized by the public as his wife, was received in the best society, and their home was often open to public receptions. McCord's children were often at his house in Merrill, Charles and Florence practically making their homes there, and were spoken of by him on all occasions as his children by his first wife, from whom he was divorced. From 1893 to the time of his death in 1907, McCord held various public offices in Arizona, and was a prominent factor in the political and social life of the territory. After the death of his second wife, McCord was again married in August, 1904, to the defendant and appellee, Mary E. McCord. She had formerly lived at Merrill, Wisconsin, and there had known McCord and his wife, also the children by the first marriage, and knew in a general way of the divorced wife living in Shawano. At the time McCord left Wisconsin and moved to Arizona he was insolvent, but his second wife had some property of her own, a house in Merrill, and about $11,000 that had been left her from her mother's estate. In 1899 McCord was adjudged a bankrupt, and discharged as such in June of that year. In 1899 McCord acquired the town lots in question for services rendered the owners of that and contiguous property, and during the following year a house was built thereon, which it appears must have been paid for from the money of his second wife, as McCord had just been discharged as a bankrupt, and does not appear to have had any money or property at that time. The property stood in the name of M. H. McCord. His second wife died in 1903. She executed a will in 1898, which was probated after her death in 1903, by which she devised and bequeathed to M. H. McCord all her real and personal property. After the death of his second wife, McCord was married to the appellee, Mary E. McCord, in 1904. In 1906 he conveyed to her this property for an expressed con-

sideration of $1,000 and in 1907 by will gave and bequeathed unto her, as his wife, all his property, real and personal, of every kind of which he might be possessed at the time of his death. He died in April, 1908, and this will was duly probated after his death.

Appellant bases her claim for the community interest sued for upon her marriage to McCord at Shawano, Wisconsin, in 1861, and the allegation that the said marriage has never been dissolved or annulled, and attacks upon this ground the validity of his marriage to Sarah E. Space in the town of Jennie, Wisconsin, in 1877, and likewise his marriage to the appellee in 1904. The appellee claims as the grantee in the deed of conveyance of the property for an expressed valuable consideration, and likewise under the will as the surviving widow of M. H. McCord.

G. P. Bullard and F. H. Lyman, for Appellant.

The mere presumption existing from a record of a second marriage might be good evidence in some cases, but certainly will not be sufficient to overcome the presumption of the continuing validity of the first marriage in the absence of other testimony, and should be given little weight in cases involving property rights. *Goodwin* v. *Goodwin*, 113 Iowa, 319, 85 N. W. 31. "Where records in each county in which parties to the first marriage lived show no divorce, the burden then shifts to the person desiring to establish the validity of the second marriage to establish divorce." *Schmisseur* v. *Beatrie*, 147 Ill. 210, 35 N. E. 525; *In re Colton Estate*, 129 Iowa, 542, 105 N. W. 1008; *Casley* v. *Mitchell*, 121 Iowa, 96, 96 N. W. 725. The presumption in favor of the divorce to establish the validity of the second marriage is not a presumption of law but a presumption of fact and may become easily overcome. *Hammond* v. *Hammond*, 43 Tex. Civ. App. 284, 94 S. W. 1067. Plenary proof in this case to overcome the presumption of the divorce can hardly be expected. *Compton* v. *Benham* (Ind. App.), 85 N. E. 365; Greenleaf on Evidence, 16th ed., par. 78; *Clayton* v. *Wardell*, 4 N. Y. 230.

Thos. Armstrong, Jr., for Appellee.

This case is one resting upon the weight and character of

testimony adduced before the court below, and the judgment will not be disturbed by this court if there be any testimony to sustain it, . . . and this court will, in accordance with its well-established rule, refuse to disturb such judgment upon the mere question as to the weight of the testimony. ''Every intendment of law favors matrimony. . . . When a marriage in fact has been shown, the law raises a presumption that it is valid, and casts the burden on him who questions it to establish its invalidity. This is a presumption of more than ordinary strength.'' *Pittinger* v. *Pittinger*, 28 Colo. 308, 89 Am. St. Rep. 193, 198, 64 Pac. 195. ''Former marriage is presumed dissolved. But the courts have not stopped here. If it is shown that a party to a marriage has contracted a previous marriage, and that his or her former spouse is still living, this has been held not to destroy the *prima facie* validity of the second marriage. In such cases it has been presumed that the first marriage has been dissolved by divorce, and that the burden to show that it has not rests on the person seeking to impeach the last marriage, notwithstanding he is thereby required to prove a negative. Here, the presumption of the continuance of the first marriage is made to yield to the presumption in favor of the validity of the second marriage, and of the innocence of the parties to it.'' *Maier* v. *Brock*, 222 Mo. 74, 133 Am. St. Rep. 513, 120 S. W. 1167, 17 Ann. Cas. 673; Bishop on Marriage and Divorce, secs. 434–449; Greenleaf on Evidence, 14th ed., sec. 35.

DOAN, J. (After Stating the Facts as Above).—As it is conceded that a lawful marriage was consummated between the appellant and McCord in 1861, the disposition of the property must be based upon the fact, or supposition, of the dissolution of that marriage by divorce, upon the validity of such divorce, if found or presumed, or if such divorce is not found or presumed to be valid, upon the estoppel of the appellant by reason of her acts, conduct, or silence during the time intervening between her separation from McCord in 1876 and his death. The decision of the lower court was couched in the following language: ''In this case the burden of proof to overcome such direct testimony as there is with respect to a divorce, and to overcome the presumption of a divorce between

the plaintiff and M. H. McCord, arising from the second mar-
riage, is upon the plaintiff in the action.    While plenary proof
by the plaintiff to show that the first marriage had not been
dissolved is not required, yet the proof to be adduced by her
must be such evidence as affords reasonable grounds for be-
lieving such dissolution not to have taken place.    It is my
opinion that the plaintiff under the evidence and circum-
stances in the case has failed to meet the burden upon her,
and that she has failed to show such a legal right to the prop-
erty sought to be recovered as to entitle her to the relief asked
for.    Judgment will be entered for the defendant.''

Appellant concedes the general rule that ''where a first law-
ful marriage is proven, and a second marriage ceremony is
also established, that there is a presumption of fact that the
parties to the original marriage must have been divorced, on
the grounds of presumption of innocence on the part of the
parties consummating the second marriage, and that the
burden of proof is on the plaintiff in this case to overcome
such presumption.''    She contends, however, that she is not
required to give plenary proof in order to overcome said pre-
sumption, and urges that the evidence in this case has been
sufficient to rebut the said presumption and shift the burden
to the defendant to establish by competent testimony the fact
of the divorce.

It would appear from this concession of the appellant and
the decision of the lower court that we need go no further.
The nonexistence of a divorce is a negative averment, and it
is the general rule that a party is not required to make plenary
proof of such negative averment.    It is enough that he intro-
duces such evidence as, in the absence of all counter-testi-
mony, will afford reasonable grounds for presuming that the
allegation is true, and, when this is done, the *onus probandi*
will be thrown on his adversary.    In this case the lower court
decided that this has not been done, and therefore gave judg-
ment for the defendant.    This judgment was reached after
considering the entire evidence in the case.    The court in its
decision recognized the rule that plenary proof was not re-
quired, and gave judgment for the defendant because of the
failure of plaintiff to overcome the presumption of the di-
vorce, or, if the divorce was taken as proven, to overcome the

presumption of its validity. It is clearly a judgment based upon the weight and effect of the evidence as determined by the court that heard the testimony and saw the witnesses on the stand. It has been so repeatedly decided by this court that an appellate court will not consider the weight of evidence when there is any substantial evidence to support the verdict of a jury or the finding or judgment of a trial court that it is unnecessary to cite authorities in support of such rule.

The appellant has stated that this appeal is one of law alone, but asks that a careful perusal of all the testimony contained in the abstract be made. We have, in compliance with her request, carefully examined all of the evidence in the case, oral and documentary. We have likewise examined the authorities cited, so far as we have been able to obtain them. We have failed to find in any of the cases cited anything to warrant us in setting aside the finding of the lower court. The appellant in the lower court testified that she received a summons in a divorce suit; that some weeks afterward she went to her former home and her husband refused to receive her; that, after she had broken into the house, they had a conversation; she does not give in evidence any of the conversation further than to say that he then told her that he was going to leave her and marry another woman; that he threw in her lap a paper, saying it was a divorce, and that she did not look to see whether it was or not. She says: "He told me I could not stay there. I don't remember the conversation we had at that time, only I know he did not want me to stay there." When asked if McCord told her he was going to marry another woman, she says: "I think he told me he was going to marry her." When asked: "Did he tell you that then?" She replied: "I presume he did. I don't remember distinctly whether he did or not." When asked by the court, "When he threw that paper in your lap, what did he say about it?" she answered, "He said that was a divorce." By the Court: "I don't understand whether you thought that was a divorce then, or that he was going to be divorced." She answered: "That that was the divorce." She and her children returned to Shawano, where they afterward lived until after McCord's death. She appears to have never openly or publicly questioned the validity of that divorce during the thirty years that followed. She permitted McCord to

marry twice, without apprising either of the innocent women or the public at large that there was any question about the validity of the divorce, and now, after his lips have been sealed, and there is no one other than herself that has the means of ascertaining the validity of this divorce, she comes into court and questions its validity, without any evidence that she has any further knowledge in regard thereto than she had on the day when it was given her. She does not produce it in court. She, the only one except the dead man who ever saw it, or could know from what court it emanated, withholds from the court all information that would enable any investigation to be made. She makes the improbable statement that she never read it. It seems very unlikely that a woman would fail to examine a paper of such vital importance to her under such circumstances. If the divorce was invalid, the information in that paper would have enabled her to have set it aside, or at least to advertise its invalidity, and prevent the guilty party from perpetrating a fraud upon an innocent woman, from violating the laws of the land, and imposing upon the public generally. The only evidence we have on this subject is the inference that we may draw that she considered it invalid from the fact that twelve years thereafter, in the heat of a political campaign, McCord was willing to pay her $3,000 as she testified, to keep still, and that she did keep still for that consideration, and never again spoke of it until after his death.

After a thorough examination of all the evidence in the case, I adhere to my first impression, that the finding and judgment of the trial court based thereon, not only cannot be disturbed by an appellate court, but that it is amply sustained thereby. In reaching this conclusion, I considered it immaterial whether the trial court may have held the divorce thus proved by the appellant to be valid, and considered her conduct and acquiescence therein at the time, and her inconsistent declarations and actions now, only as affecting her credibility, or held her to be estopped now to attack an invalid divorce by reason of her silence and acceptance of it as valid during all these years while the rights of other parties have intervened, under the rule that "he who is silent when conscience requires him to speak shall be debarred from speaking when conscience re-

XIII Ariz.—25

quires him to keep silent." *Evans* v. *Woodsworth*, 213 Ill. 404, 72 N. E. 1082; *Hammond* v. *Hammond*, 49 Tex. Civ. App. 482, 108 S. W. 1024; *Pittinger* v. *Pittinger*, 28 Colo. 308, 89 Am. St. Rep. 193, 64 Pac. 195.

The judgment of the lower court should be affirmed.

CAMPBELL, J.—Mr. Justice DOE and I concur in the affirmance of the judgment in this case on the ground that the appellant under the facts of the case is estopped from asserting her rights as the wife of McCord.

PER CURIAM.—The judgment of the district court is affirmed.

LEWIS, J., deeming himself disqualified, took no part in the determination of this case.