[Civil No. 2926. Filed May 6, 1931.]

[298 Pac. 922.]

NORTH RIVER INSURANCE CO., a Corporation, Appellant, v. E. F. SANGUINETTI, Appellee.

Messrs. Ellinwood & Ross, Mr. Martin Le Boutillier and Mr. Wm. H. Mackay, for Appellant.

Mr. William H. Westover, for Appellee.

ROSS, J.—E. F. Sanguinetti brought this action against O. T. Simonson for $1,321.11, and caused a writ of garnishment to be issued and served on the

North River Insurance Company, insurance carrier for Simonson whose property had been recently destroyed by fire. The contest is between plaintiff and the garnishee. Judgment in favor of plaintiff against defendant Simonson was entered upon the pleadings, and the latter dropped out of the case except as a witness. Upon issues formed between the plaintiff and the garnishee, the trial proceeded before a jury and resulted in a verdict in favor of the plaintiff. The garnishee has appealed.

The facts are presented to us under an agreed statement of the case. We learn therefrom that some time before the fire the garnishee issued to Simonson, on a New York standard form, a policy of insurance against damages by fire, to building $500, merchandise $600, fixtures $450, and personal effects $150, located in Wellton, Yuma county; that all said property was, on August 27, 1927, destroyed by fire; that due proof was made and payment demanded and refused before suit was brought and garnishment served; that the building was not on ground owned in fee simple by the insured, but that it was on leased ground and there was a mechanic's lien on it for $800; that the personal effects belonged to one Thompson; that certain of the fixtures, to wit, tanks, pumps and gasoline equipment were bought under conditional sales contracts and were not entirely paid for; and that said Thompson was a partner of the insured "in the profits derived from the business."

We also learn therefrom that the garnishee's defense is based upon the insured's breach of the following conditions of the policy, to wit:

"This entire policy, unless otherwise provided by agreement endorsed hereon or annexed hereto shall be void if the interest of the insured be other than unconditional and sole ownership."

" . . . if the subject of insurance be a building on ground not owned by the insured in fee simple."

"This entire policy shall be void if the insured has concealed or misrepresented in writing, or otherwise, any material fact or circumstance concerning this insurance or the subject thereof, or if the interest of the insured in the property be not truly stated herein."

That the plaintiff denied that the insured concealed or misrepresented in writing or otherwise any material fact or circumstance concerning the insurance or the subject thereof, and contended that the garnishee waived the unconditional and sole ownership and fee-simple clauses in the policy.

The garnishee presents its contentions in the form of two assignments: First, it is said the plaintiff having admitted in his pleadings and in his evidence breach of the conditions of the policy, and there being no evidence of a waiver of those conditions by the garnishee or its authorized agent, its motion for a directed verdict should have been granted; second, that "the trial court erred in instructing the jury that garnishee waived the conditions by issuing the policy without requiring a written application from the insured and investigating insured's ownership."

Whether the encumbrance on the insured's title and ownership was a breach against the warranties inserted in the policy we think depends upon the facts. If at the time, or before, the policy was written the insurance company was truthfully informed by the insured that the building was on leased land, that there was a mechanic's lien filed against it, that the fixtures were bought on conditional sales contract and had not been entirely paid for, that the personal effects belonged to Thompson, etc., and, notwithstanding, the company wrote and delivered a policy to the insured as though it had not been given such information, the breach of the conditions as to ownership and title would be only nominal and not actual. The insured had an insurable interest in all the property (except the personal effects) and such interest

the policy recognizes might have been insured "by agreement endorsed hereon or annexed hereto." The omission of such indorsement or rider, when all the information as to ownership or title is imparted, should be charged to the party preparing the policy—the insurer invariably in all these cases.

That the information as to the insured's title and interest in the property was given the garnishee before or at the time the policy was written seems quite certain. O. T. Simonson, the insured, was the only witness, and we are impressed, as the jury must have been, that he told the truth as to how he obtained the policy. He saw. one Shanks, who occupied a room in lawyer Timmons' office in Yuma, and asked him about getting insurance. Shanks either had in his possession or went into the Security Trust & Savings Bank, located near by, and got a blank policy, or a blank application for a policy, with the North River Insurance Company. Witness said he thought Shanks was in the real estate business. Anyway, Shanks asked the insured about his property and wrote with a typewriter his answers on the blank he had. Among other things, witness handed him a lease of the ground his building was on, from which he took the description of the property to be insured. He told him the lease was for ten years; that the tanks, pumps, and gasoline equipment were bought on conditional sales contracts and were not entirely paid for; that the personal effects belonged to Thompson; and that he had agreed with Thompson to insure them.

The policy was mailed a few days later to the insured at Wellton, but by whom it is not clear from the evidence. It was signed by a Mr. Taylor, who, although there is no evidence to that effect, evidently represented the garnishee as its agent. Taylor apparently officed in the Security Trust & Savings Bank and had something to do with that institution, just what the record does not show.

Garnishee would attach to Simonson's testimony some discredit because he was not certain whether Shanks filled out an application or the policy in his presence. One thing is certain, he did one or the other. There was no application for insurance other than the one to Shanks. As a result thereof, the policy was issued, and no question is raised as to its validity. The insured did not see or confer with Taylor, had no personal contact with him. Taylor was seen by Shanks and upon information furnished by Shanks the policy was issued. It is said there is no evidence that Shanks was the agent of the company. This we think is immaterial if he imparted to Taylor what he learned from the insured. However, there is nothing to indicate that Shanks was a volunteer to assist Simonson in procuring the insurance. On the contrary, he had in his possession blank forms used by the garnishee in soliciting and writing insurance, or if he did not have such blanks he went into the bank and got them. These facts alone, it would seem to us, would clothe him at least with apparent authority to represent the company and place upon the latter the burden of showing the contrary, if it be not a fact.

That the conditions in the policy could be waived otherwise than by indorsement thereon in writing we think is settled. *American Eagle Fire Ins. Co.* v. *McKinnon,* 36 Ariz. 409, 286 Pac. 183; *Gregerson* v. *Phenix Fire Ins. Co.,* 99 Wash. 639, L. R. A. 1918E 521, 170 Pac. 331. There was evidence showing, or tending to show, that the company knew the circumstances and conditions of the insured's interest in the property at the time it wrote the policy and, that being true, the issue of waiver was correctly left to the jury.

The request for a directed verdict was properly denied.

The instruction the court gave on the effect of issuing a policy without an application or an investi-

gation of the subject of insurance is not as stated in the second assignment, but is as follows: " . . . That when an insurance company issues its policy, and accepts and retains the premium without requiring an application by the insured, and without making any inquiry as to the condition of the property or the state of the title, and the insured has in fact an insurable interest, the company will be conclusively presumed · to have insured such interest, and to have waived any provision in the policy providing for its forfeiture by reason of any facts or circumstances affecting the condition of the title of the property in regard to which no such statement was required or inquiry made."

If we adopt the view that Shanks' only interest was to help Simonson obtain insurance, and that what he did was done as the agent of Simonson and not as the agent of the insurer, the instruction finds support in the evidence and, if it states a correct rule of law, was properly given. Taylor, or whoever executed and issued the policy, got the data concerning the insured and the subject of insurance from Shanks, who, we may assume, said nothing about the building being on leased land or any encumbrances on the rest of the property. Notwithstanding, with no knowledge of the insured or the character or extent of his interest in the subject of insurance, the policy was issued and the premium thereon paid or secured. This without any written application or representation as to ownership, etc., and also without any investigation of the subject of insurance or the insured.

The courts are not in agreement on the rule stated in the quoted instruction. As is said in 14 Ruling Case Law 1185, section 363:

"Of course a provision in a fire policy that the insured 'covenants and engages that the representation given in the application contains a just, full, and true exposition of all the facts and circumstances in regard

to the condition, situation, value and risk of the property insured,' is waived by an insurer who issues the policy upon a bare request to insure the property, unaccompanied by any statement as to its condition, situation, value, or risk. And many courts maintain the proposition that where an insurer issues a policy without requiring any application or representations, or omits in an application to make inquiry as to a ground of forfeiture provided for in the policy, it waives the right to insist on a breach existing at the time of the issuance of the policy. There is, however, considerable authority founded on sound reasoning that where a policy is issued providing that it shall be void on certain conditions, relating to the inception of the risk, the insurer may insist thereon notwithstanding the fact that no application or representations were made.''

The cases cited under the above text supporting the rule seem to be more numerous than those cited rejecting it. We are imbued with the justice of the rule.

Insurance companies are officered by men of experience and training in their business. They devise and promulgate rules regulating their affairs and, subject to limited legislative control, fix the terms of their contracts. Their knowledge of the business is both technical and practical, and they are also more or less familiar with the rules of law governing insurance. In those respects their patrons come to them upon an unequal footing and pay the premium, relying upon the company to see that they are protected. If asked questions as to their property, they, of course, are expected to answer truthfully. If no questions are asked but a policy is issued, the insured relies upon the honesty and superior knowledge of the company's employees that all is well; that nothing is left undone to protect him against fire loss. It is natural and reasonable that the insured should thus confide in the insurer.

The rule stated in the instruction has much support in the decisions and seems to be founded upon principles of justice and right. Its giving was not error. The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.