[Civil No. 3350. Filed October 23, 1933.]

[26 Pac. (2d) 117.]

INSURANCE COMPANY OF NORTH AMERICA, a Corporation, Appellant, v. PAT H. WILLIAMS, as Trustee of REED LUMBER COMPANY, a Corporation, SOUTHWEST SASH, DOOR & GLASS COMPANY, a Corporation, and CRANE COMPANY, a Corporation, Appellees.

Messrs. Frazier & Perry, for Appellant.

Mr. L. J. Cox and Messrs. Phillips, Holzworth & Phillips, for Appellees.

LOCKWOOD, J.—This is an appeal from a judgment rendered against Insurance Company of North America, a corporation, hereinafter called defendant, and in favor of Pat H. Williams, as trustee, hereinafter called plaintiff, on a certain fire insurance policy. Defendant recognizes our rule that on an appeal the evidence must be construed as favorably as possible in support of the judgment, and taken thus the facts may be fairly stated as follows:

William J. Fellows and his wife were the owners of a certain dwelling-house upon which Win Wylie held a mortgage. On this building Fellows had obtained two fire insurance policies, each of which contained a mortgagee clause in favor of Wylie. Thereafter, and on February 8, 1932, he obtained from Bruce Darling, a local agent of defendant, the policy on which this action was based, which does not contain any mortgagee clause and states upon its face: "Notice is hereby accepted that this is excess insur-

ance over amount of mortgage and policy is not required by mortgagee." The policy also contains the following provisions which are part of the New York Standard form of fire insurance policy as it existed at the time of the adoption of the Revised Code of 1928:

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if . . . , with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed," and: "No one shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement added hereto, nor shall any provision or condition be held to be waived unless such waiver shall be in writing added hereto . . . "

Fellows testified that before the issuance of the policy Darling had been notified by him that Wylie was threatening to foreclose his mortgage, and that he (Fellows) wanted to protect his equity in the property, and "he asked me about a rider on there and I said, 'You are the insurance man'; I said, 'You have been handling my insurance; you do it your way to protect me.' " Shortly after the issuance of the policy Wylie did commence foreclosure proceedings and summons was properly served upon Fellows and his wife. A few days later Fellows had a conversation with Darling in which he used language, which, taken in consideration with his previous conversation, might fairly be said to give information to Darling that the foreclosure proceedings had been commenced. On March 7th a fire occurred on the premises, causing the damage which is the basis of this suit. Fellows did not pay the premium for the policy at the time it was taken out, and testified that he had taken out a number of insurance policies of various kinds with Darling which were carried by

the latter in a general account, and that it was his custom to make payments on the general account without specifying any particular policy to which the payment was to be applied. Darling never, according to Fellows, asked for the payment of any particular premium before sixty days after the policy had been issued. He further testified, however, that there was always a balance due Darling on the general account, and that at some time after he had informed Darling in regard to the mortgage foreclosure the latter asked him for a payment on the general account, but did not specify payment of the premium on the particular policy involved herein. It further appears that Fellows never did pay his full indebtedness on the general account and that there is a balance still due Darling thereon. We think this states the facts of the case sufficiently so that we can consider the propositions of law raised by this appeal.

The first is whether or not the policy became void when the foreclosure proceedings were commenced, unless the insurer waived the forfeiture or is estopped from its conduct from asserting it. We have had this question before us in the case of *Peterson* v. *Hudson Ins. Co.*, 41 Ariz. 31, 15 Pac. (2d) 249, and said:

" . . . the policy becomes void at such time after the suit is actually filed as the insured knows of its existence, unless the insurer, with knowledge of the changed conditions, either waives the clause in question or is estopped from asserting it."

Under the foregoing statement of facts, therefore, the policy became void before the occurrence of the fire unless the insurer had either waived the forfeiture or was estopped from asserting it, nor indeed does plaintiff question this as a general rule of law; his contention being that the facts show both a waiver and an estoppel.

335

The second question for our consideration is: Do the foregoing facts show a waiver by the insured? It is evident on reading the many cases which discuss the question of waiver and estoppel that the courts in a great number of instances confuse the two and use the term "waiver" when the facts show an estoppel, or the term "estoppel" when the facts really show a waiver. Waiver and estoppel are two very different things. We have discussed the difference in *Peterson* v. *Hudson Ins. Co., supra,* and in *Equitable Life Assur. Soc.* v. *Pettid,* 40 Ariz. 239, 11 Pac. (2d) 833. In the former case we say: " . . . Waiver is a voluntary and intentional act. Although it is frequently confused with estoppel, the two are very different in their nature, one being based on the actual intent to give up a right, and the other, negativing such intent, being based on actual or constructive fraudulent conduct and the principles of equity. . . . " In the latter case we say: "In waiver, the essential element is an actual intent to abandon or surrender a right, while in estoppel such intent is immaterial, the necessary condition being the deception to his injury of the other party by the conduct of the one estopped."

Let us consider first the effect, if any, of the clause in the policy above quoted, to the effect that no provision or condition thereof should be held to be waived unless such waiver should be in writing and added to the policy. Similar clauses have been before the Supreme Court of the United States several times, and it has uniformly held that where the policy itself provides that a waiver must be shown by a written indorsement, an agent has no power to waive any of the provisions thereof except in the manner set forth in the policy. *Penman* v. *St. Paul Fire & Marine Ins. Co.,* 216 U. S. 311, 30 Sup. Ct. 312, 54 L. Ed. 493; *Northern Assur. Co. of London* v. *Grand View Building Assn.,* 183 U. S. 308, 22 Sup. Ct. 133,

46 L. Ed. 213; *Sun Ins. Office* v. *Scott,* 284 U. S. 177, 52 Sup. Ct. 72, 76 L. Ed. 229.

We have said in *Equitable Life Assur. Society* v. *Pettid, supra:*

" . . . An insurance policy is a contract, and in an action based thereon the terms of the policy must govern. The court cannot write a new contract for the parties in accordance with its idea of what the original one should have been. . . . But, where the provisions of the contract are plain and unambiguous upon their face, they must be applied as written, and the court will not pervert or do violence to the language used, or expand it beyond its plain and ordinary meaning or add something to the contract which the parties have not put there. . . . "

There is no contention in this case that any written waiver of the forfeiture was indorsed upon the policy, but it is urged by plaintiff that we have held in the cases of *American Eagle Fire Ins. Co.* v. *McKinnon*, 36 Ariz. 409, 286 Pac. 183, and *North River Ins. Co.* v. *Sanguinetti,* 38 Ariz. 221, 298 Pac. 922, that an oral change or alteration of a written insurance contract when founded upon a sufficient consideration is valid, and that a waiver of the conditions of the policy may be made by parol.

The case of *American Eagle Fire Ins. Co.* v. *McKinnon, supra,* does not discuss the question of an oral waiver when the policy itself contains a provision expressly prohibiting it. It merely holds that even though the law requires parties making a contract of insurance to use the standard form, that such contract may be amended or changed orally, provided the amendment or change is not in contravention of the provisions of the standard form, and that the amendment made in the policy involved therein was not in contravention of the New York Standard form. We need not consider the question of a change or alteration of the policy herein, for there is no con-

tention that such was made, nor was there any pretense of a consideration therefor.

In *North River Ins. Co.* v. *Sanguinetti, supra,* we did state:

"That the conditions in the policy could be waived otherwise than by indorsement thereon in writing we think is settled. [Citing *American Eagle Fire Ins. Co.* v. *McKinnon, supra,* and *Gregerson* v. *Phenix Fire Ins. Co.,* 99 Wash. 639, 170 Pac. 331, L. R. A. 1918E 521.]"

It does not appear that the policy involved in the Sanguinetti case contained a provision like that in the present one, requiring a written waiver, nor did we discuss the effect of such a clause. It appears from the facts in the Sanguinetti case that the policy had certain provisions to the effect that it should be void if the insured had concealed any material facts or if the interest of the insured in the insured property should be otherwise than unconditional and sole ownership, or if the ground on which the building stood should not be owned by the insured in fee simple. The interest of the insured was not of the kind required by the policy, but there was evidence justifying a holding that at the time the company issued the policy it knew such to be the case, and we held on these facts that when a policy was issued by a company which accepted and retained the premium knowing the interest of the insured in the property and the state of the title, the insurer would be deemed to have waived any provision in the policy providing for its forfeiture by reason of conditions relating to the *inception* of the risk. Substantially the same facts existed in the case of *Gregerson* v. *Phenix Fire Ins. Co., supra.* We reaffirm the rule that an insurance policy is not voided by the nonexistence of facts which are expressly made a condition precedent to its issuance, where the insurer knows of their nonexistence at that time, but in the case at bar the fact which

voided the policy arose after its issuance, which creates an entirely different situation from that existing in the Sanguinetti case. We are therefore of the opinion that the two Arizona cases last cited are not in conflict with the rule laid down by the Supreme Court of the United States to the effect that where a policy on its face expressly provides, as in the present instance that no waiver of the conditions may be made except in writing indorsed thereon, the terms of the policy must prevail and that no agent of the insurer is authorized to waive conditions subsequent which are set forth on the face of the policy, except in the manner provided by such policy, and that such is the correct rule. Such being the case, there is no competent and legal evidence that the defendant ever waived the forfeiture clause contained in the policy.

We next consider the question of estoppel. The first contention of defendant is that an estoppel must be specially pleaded. This is true, but it need not be pleaded by name, and if the facts as set forth in the pleadings show an estoppel that is sufficient to raise the issue. In substance, the pleadings state that after the insured had notified defendant of the foreclosure proceedings, the latter continued to treat the policy as in full force and effect and did not in any manner notify the insured that it intended to enforce the forfeiture clause. The essential elements of an estoppel are that the party estopped, with full knowledge of the facts, must have asserted a particular right inconsistent with the one which he later sets up to the prejudice of another who has relied upon his first conduct. In this case it is plaintiff's contention that defendant's failure to notify Fellows that it intended to take advantage of the forfeiture clause, and its having demanded of him the payment of the premium due on the policy after it knew of the foreclosure proceedings, lulled him into security and thus prevented his continuing the current insurance

by the payment of an additional premium or obtaining other insurance upon the property, thus causing him to change his condition to his prejudice. There is no evidence in the record sustaining the claim of plaintiff that defendant did demand the premium *on the policy in question,* after knowing of the foreclosure proceedings. Fellows himself expressly testified that defendant's agent never demanded the payment of any specific premium on any specific policy until sixty days had elapsed from its issuance, and that the demand made was simply one for payment on general account. We think this is insufficient to sustain a holding that Fellows was deceived and prejudiced by a request made for the payment.

The other question is as to the effect of the failure to notify Fellows that the company did not intend to take advantage of the forfeiture clause. The rule contended for by plaintiff is well stated in the case of *Swedish-American Ins. Co.* v. *Knutson,* 67 Kan. 71, 72 Pac. 526, 100 Am. St. Rep. 382, as follows:

" . . . When it [the insurer] assumed to remain passive, the assured was deprived of any opportunity to protect himself if the policy were to be forfeited. The term 'void,' as used in the contract, is to be regarded as meaning that the insurer had, at its exclusive option, the right to treat the policy as a nullity. It was put to its election whether or not it would do so upon receipt of the notice, and, having failed to act within a reasonable time, it is estopped to claim a forfeiture when it became to its advantage to do so, after loss had occurred. . . . "

This rule is supported by numerous authorities. The question then is whether Fellows was entitled to rely upon the failure of defendant to notify him that it intended to enforce the forfeiture clause as signifying that it did not intend to rely on such clause until it was too late for him to protect himself by another policy. It appears that when the policy was first taken out Fellows testified that he said to Darling:

" . . . and he asked me about a rider on there and I said, 'You are the insurance man' I said, 'You have been handling my insurance; you do it your way to protect me.' . . . "

We think this was sufficient to put the insurer on notice that Fellows was relying on it to do whatever was necessary to see that his interests were properly protected, and such being the case good faith required that if it intended to enforce the forfeiture clause it was its duty to inform Fellows of that fact within a reasonable time so that he might protect himself by tendering the additional premium usually required for continuing insurance when foreclosure proceedings are pending, or by securing another policy. The trial court found:

"That defendant knew that plaintiff's assignors desired said insurance, in the nature of excess insurance over the amount required by said mortgage and ordered said policy because of said threatened foreclosure and notified said general agent, Bruce M. Darling to write such a policy as would protect their interest and were assured by said agent that same was done. . . .

"That immediately following the 16th day of February, 1932, and at various times prior to the 7th day of March, 1932, the said William J. Fellows notified the said general agent Bruce M. Darling that said foreclosure proceedings had been filed, and the defendant knew of the commencement of said proceedings and received notice after the issuance of said policy and prior to the 7th day of March, 1932.

"That defendant after issuing said policy, with knowledge and with notice of said threatened foreclosure, and after receiving notice of said foreclosure and before said fire did not make or offer to make any endorsement thereon and added thereto."

These findings are sufficient to show an estoppel on the part of defendant. There is some question raised as to Darling's authority to bind defendant

by an estoppel. We think this is settled by the admission by defendant that he was the agent who issued the policy. 32 C. J. 1065, 1069, and cases cited.

The trial court therefore was authorized to render judgment in favor of plaintiff, and it is affirmed.

ROSS, C. J., and McALISTER, J., concur.