[Civil No. 3625. Filed December 30, 1935.]

[52 Pac. (2d) 1157.]

ETHEL LILLYWHITE, Now Known as Mrs. C. Warren Peterson, and C. WARREN PETERSON, Also Known as C. W. Peterson, Her Husband, Appellants, v. JOHN T. COLEMAN, Guardian of the Estate and Person of Morris and Iris Coleman, Minors, and JOHN T. COLEMAN, Individually, Appellees.

Mr. M. L. Ollerton, for Appellants.

Mr. Albert W. Gurtler and Messrs. Laney & Laney, for Appellees.

LOCKWOOD, C. J.—This is an appeal by Mrs. C. Warren Peterson, formerly Ethel Lillywhite, and C. Warren Peterson, her husband, hereinafter called defendants, from a judgment foreclosing a mortgage in favor of John T. Coleman as guardian of the estate and person of Morris and Iris Coleman, minors, and John T. Coleman, individually, hereinafter called plaintiff. There were other defendants, but as they have not appealed, we refer to them by name as necessary.

We think the most satisfactory way of considering the appeal will be to state first the theory of the case on behalf (a) of plaintiff and (b) of the defendants, as shown by the pleadings. The complaint of plaintiff sets up that defendant Mrs. C. Warren Peterson, formerly Ethel Lillywhite, together with Leo Alldredge and Ida R. Alldredge, his wife, made their promissory note in the sum of $1,500 in favor of plaintiff as guardian of his five minor children, and to secure said note made a mortgage upon the property foreclosed in this action; that thereafter plaintiff, in his individual capacity, acquired the interest of three of the minor children in the debt; that the note and mortgage were due and unpaid, and the prayer was for judgment on the note and the usual foreclosure of mortgage. The Petersons answered, denying that Mrs. Peterson made or

executed the note in question. In reply, plaintiff stated that the defendants Petersons and Ida R. Alldredge claimed that the note and mortgage were forgeries made by Leo Alldredge, who was the husband of Ida R. Alldredge and one of the parties named as defendant to the action. Plaintiff then alleged that if such signatures were so forged the defendants whose names appeared as subscribed to the note and mortgage were estopped from denying that they had executed them, setting up the facts which he relied upon as creating such an estoppel. The case was tried before the court sitting with a jury, and various interrogatories were submitted to the jury and answered by it, the answers thereto being afterwards adopted by the court in its findings of fact and judgment. Under our usual rule, we must accept these findings and the reasonable inferences to be drawn therefrom as representing the true facts of the case.

So taken, the material facts may be stated as follows: Leo Alldredge was the brother-in-law of Ethel Lillywhite. March 1, 1929, plaintiff, as guardian of his minor children, made a loan of $1,500 on the security of a note and mortgage which, on their faces, purported to be signed by Ethel Lillywhite, Leo Alldredge and Ida R. Alldredge. This note and mortgage were delivered to plaintiff by Leo Alldredge with the representation that all of the signatures thereon were true and genuine, and plaintiff, believing this to be the fact and relying thereon, delivered the $1,500 into the custody of Alldredge. As a matter of fact, the purported signatures of Ethel Lillywhite to the mortgage and note were placed thereon without her knowledge or consent by Alldredge. She did not, however, within a reasonable time after her discovery of such forgery, or at any time before the bringing

of the present suit, which was more than five years after the execution of the documents, notify plaintiff that her signatures thereto were forgeries. At least once after she had discovered the forgeries she told plaintiff, in substance, that if she had the money she would pay the mortgage; that she would be willing to deed the property to the plaintiff except for the fact that the Alldredges were interested therein, but that if he wished to bring foreclosure proceedings on the mortgage she would not appear in court to contest it. The reason for her silence in regard to the forgery was her reluctance to have her brother-in-law prosecuted for a crime. Plaintiff, relying upon her silence, refrained from making an earlier effort to collect the note from Leo Alldredge and, as three of his children became of age, paid them their share of the funds represented by the mortgage from his own money, relying upon the conduct of Mrs. Peterson, as aforesaid. The result of her failure to disclose the true facts to plaintiff caused plaintiff to delay in proceeding against Leo Alldredge in such a manner that it injured to some degree his chances of collection from the latter. All of the circumstances connected with the case, including the conduct of Mrs. Peterson, were of such a nature that a reasonably prudent man would not be put on inquiry as to whether or not her signatures were forgeries.

On these findings of fact, direct and implied, we consider the assignments of error. They are eleven in number and defendants claim eight propositions of law are raised by them. They do not, however, group the assignments of error under the different propositions of law, as required by our rules. Notwithstanding this failure to group them will somewhat hamper us in our discussion of the appeal, we consider it on its merits so far as we can do so.

■ The first assignment is that the court refused to grant the motion of defendants for a verdict in their favor when plaintiff rested on his case in chief. We need not consider this assignment further than to say that, since defendants then proceeded to offer evidence in support of their answer, they waived the motion, and in determining whether the evidence is sufficient to sustain the verdict and judgment we should consider all of the evidence in the case, rather than that of plaintiff alone in his case in chief. *Southwest Cotton Co.* v. *Ryan,* 22 Ariz. 520, 199 Pac. 124.

■ The second, third, fourth and fifth assignments of error deal with the admission of certain evidence over the objections of defendants. It will be observed from the foregoing statement of the pleadings and facts that the vital question before the court and jury was whether the conduct of Mrs. Peterson was such that she was estopped from denying the authenticity of her signatures to the note and mortgage. The essential elements of an equitable estoppel may be stated as follows: (1) There must be a false representation *or concealment of material facts;* (2) it must have been made with knowledge, actual or constructive, of the facts; (3) the party to whom it was made must have been without knowledge of or the duty of inquiring further as to the real facts; (4) it must have been made with the intention it should be acted upon; and (5) the party to whom it was made must have relied on or acted on it to his prejudice. There can be no estoppel if any of these essentials are absent. 21 C. J. 1119, and cases cited. It will be observed that estoppel may rise either from the making of false representations or the concealment of facts that it is the duty of the party estopped to reveal. It is generally held that a person whose name

is signed to an obligation without his authority will be estopped from denying his liability if he so acts or speaks that the holder or intending purchaser of the obligation is misled as to the validity of the signature and either purchases the obligation or relinquishes some right or suffers an injury in connection therewith in consequence. *Tardio* v. *First Nat. Bank of Bryan,* (Tex. Civ. App.) 166 S. W. 1180; *Gluckman* v. *Darling,* 85 N. J. L. 457, 89 Atl. 1016; *Salomon* v. *Hopkins,* 61 Conn. 47, 23 Atl. 716; 21 C. J. 1145. It was, therefore, necessary for plaintiff to prove either that defendants had directly represented to him that the signature of Ethel Lillywhite was genuine, or else they had made such representation of other facts as would cause a reasonably prudent man to assume therefrom that the signature was genuine, or had failed to disclose, when the circumstances were such that a disclosure was proper and required, that the signature was a forgery. We think that the questions objected to in assignments of error 2, 3, 4 and 5 all were such as were admissible on the question of whether Mrs. Peterson disclosed the fact that her signatures were forgeries or whether a reasonably prudent man, under all the surrounding circumstances, would have been put on inquiry, and that the court correctly admitted them.

The evidence referred to in assignments of error 6 and 7 was also admissible. It was admitted that Leo Alldredge was Mrs. Peterson's brother-in-law and that their relations were quite intimate. Question 6 merely went to another fact proving such intimacy, and the same situation applies to assignment 7. All evidence referring to such relations is admissible as bearing on the disputed question as to whether Mrs. Peterson did communicate to plaintiff the facts that her signatures were forgeries. One

whose signature has been forged will be much less likely to communicate it if the forger is a close relation or intimate friend than if he is a perfect stranger, and the evidence along this line was, therefore, material for the consideration of the jury in determining whether she or plaintiff had testified truly in regard to whether such information had ever been given the latter or not.

The ninth assignment of error is that the court allowed plaintiff to reopen his case and put in evidence an application made by defendant Mrs. Peterson to the Home Owners Loan Corporation for a loan on the property described in the mortgage. The application signed by Mrs. Peterson states that there was a mortgage on the property, referring to the identical mortgage involved in this case, and that one of the reasons for applying for the loan is "mortgagee wants his money." We think this application might be properly considered by the jury on the question of whether Mrs. Peterson had at any time prior to the suit impliedly recognized her liability upon the mortgage. If it was admissible it was, of course, discretionary with the court as to the reopening of the case. *Costello* v. *Cunningham,* 16 Ariz. 447, 147 Pac. 701.

We come then to the eighth assignment of error, which, in substance, is that the evidence fails to show the necessary elements of an estoppel or, in other words, that the evidence does not sustain the findings and the judgment. We consider, therefore, the evidence in relation to the findings. It is apparently admitted that all of the transactions involved in the making of the original note and mortgage were between plaintiff and Leo Alldredge personally; the latter making the application for the loan, and delivering the note and mortgage to plaintiff and receiv-

ing the cash therefor. The testimony of plaintiff, which we must accept as showing the true facts of the case whenever there is any controversy in regard thereto, was in substance as follows: The first time apparently that Mrs. Peterson knew anything about the note was when it was about a year old, at which time plaintiff met her husband and told him that the interest on the note was overdue. Peterson replied that he knew nothing about the matter but would see his wife, and a little later informed plaintiff that she said she knew nothing about it, and asked permission to examine the note which was permitted by plaintiff. A few days thereafter the Petersons and the Alldredges went to plaintiff's place and, in the presence of the four of them, Alldredge said, "Mrs. Peterson wanted me to come out here and tell you that I gave you that mortgage without her consent," but that none of the parties at that time said to him that she had not signed the note and mortgage. There was some general conversation, and Peterson said, "Well, what you want now is your interest." Plaintiff stated that he understood Alldredge's statement at that time to mean that Mrs. Peterson had not previously authorized Alldredge to deliver the note and mortgage, and not that anything was wrong with their execution. Nothing more apparently was done for a couple of years. In 1932 plaintiff again had a conversation with Mrs. Peterson, stating that he had come to see about collecting the interest. She then told him that she would pay him if she had the money; that she would deed him the place except that it would not be fair to Alldredge; but that if he could not wait and wanted to foreclose, she would not resist the foreclosure. Plaintiff was emphatic that at no time until this suit was filed did Mrs. Peterson or any other person tell him that she had not signed the note and

mortgage. He also testified that he had refrained from bringing the foreclosure suit because he always believed that the note and mortgage were valid obligations of Mrs. Peterson's, and that if he had known of the true facts in 1930 he could and would have brought suit against Alldredge, and could have collected from him at least part of the indebtedness.

This, in substance, is the testimony on which the jury based its findings as to the controversial questions in the case. We think that if it believed Coleman, as it must have done, it was certainly justified in finding that defendants deliberately refrained from communicating the true state of facts to plaintiff, with the intention that he should be deceived thereby. We further believe that under all the circumstances it was Mrs. Peterson's duty, as soon as it was called to her attention that the note and mortgage were outstanding and purporting to bear her signatures, to inform plaintiff that she had not signed them, and that her conduct in failing to do so constituted a concealment of material facts, made with knowledge of the true facts and with the intention that plaintiff should act thereon. It was also a legitimate deduction from the testimony of Coleman that he did act thereon to his injury both in his individual capacity and as guardian, the first by purchasing three-fifths of the obligation from those of his children who had become of age after its execution, and the second by refraining from bringing action against Alldredge in 1930 when, according to his testimony, he could have collected from the latter at least a few hundred dollars on the obligation. The evidence, therefore, sustains the finding that he had acted or refrained from acting to his prejudice both in his capacity as guardian and as an individual, by reason of the concealment.

The only question remaining as to whether the elements of estoppel were sufficiently shown is whether Coleman, as a reasonably prudent man, was apprised of facts which should have put him on inquiry as to the authenticity of Mrs. Peterson's signatures. The jury has found that he did act as a reasonably prudent man, and unless we can say, as a matter of law, that he did not so act, we are bound by their finding. On the one hand, we have the fact that Alldredge was a brother-in-law of Mrs. Peterson; that they were on the most friendly of terms; that the mortgage showed on its face that Ethel Lillywhite had acknowledged it before a notary; that they came together to plaintiff's place when Mrs. Peterson was first apprised of the existence of the note and mortgage to discuss the matter; and that they then failed to reveal that her signatures were forgeries. On the other hand, it was admitted by plaintiff that he was then informed that the note had been delivered to him without her consent. The reasonably prudent man, of course, would have been advised at that time that there was something wrong in the transaction. But was the only inference of wrongdoing to be derived therefrom a knowledge or belief that the signatures were forged? Plaintiff says that he thought the trouble was that the note had been delivered to him without Mrs. Peterson being present to receive the money, and that the real objection was not that she had not signed the instruments, but that Alldredge had delivered them and kept the money for himself without her consent. It is probably true that a skilled attorney, or a layman of more than ordinary prudence, dealing at arm's length with strangers, after being informed that Mrs. Peterson had not consented to the delivery of the note and mortgage, should and would have pressed his inquiries further. But plaintiff was only bound to

exercise the prudence of the ordinary man, dealing with trusted friends. We cannot say as a matter of law, under all the circumstances of the case, that his inference was unreasonable, and if there are two inferences which a reasonably prudent man may draw from a given state of facts and he testified that he has drawn inference (a) rather than (b), we think the jury is entitled to pass upon the truth of his statement and that we are bound by its conclusion thereon.

■ We conclude, therefore, that the essential elements of an estoppel against Mrs. Peterson are sustained by the evidence, and the jury having found these facts on sufficient evidence, we may not question the findings merely because it might have been that had we been members of the jury we would have believed the testimony of the Petersons rather than that of plaintiff.

Assignment 10 is that the judgment does not do justice, but operates as a fraud and injustice. Assuming again, as we must, that the jury has correctly found the facts as they exist, the inevitable conclusion that must be drawn therefrom is that Mrs. Peterson, not desiring to subject her brother-in-law to a criminal prosecution for forgery, refrained from revealing to plaintiff the fact that he had committed such a crime, and that, relying on her concealment, plaintiff was lulled into security until the statute of limitations had run against any criminal prosecution, and then, and not until then, was he informed of the true facts in the case.

■ Considering merely the ethical aspects of the situation, there is much to be said in favor of the proposition that it is praiseworthy for one to attempt to protect a close relation from the consequence of his misdeeds, but it is also true that if such protection is given it should be at the expense of the pro-

tector and not at the expense of an innocent third party. Had Mrs. Peterson formally assumed the obligation of the note and mortgage in question and paid it to protect her brother-in-law, we could, as men, have nothing but praise for her actions, regardless of what might be said from a purely legal standpoint. But when she attempts to shift the burden of the loss upon an innocent third party by her failure to reveal the true facts in a timely manner, we feel that the equities of the case are with plaintiff. *Green* v. *Gila Water Co.*, 36 Ariz. 303, 285 Pac. 263; *Hughes* v. *Riggs Bank*, 29 Ariz. 44, 239 Pac. 297.

Assignment 11 is covered by what we have already said.

For the foregoing reasons, the judgment of the superior court is affirmed.

McALISTER and ROSS, JJ., concur.