381 P.2d 573

**Benjamin S. CROSS, Appellant,**

**v.**

**Katherine CROSS, Appellee.**

**No. 6930.**

Supreme Court of Arizona.

En Banc.

May 16, 1963.

Rehearing Denied June 18, 1963.

Charles T. Stevens & Howard P. Leibow, Phoenix, for appellant.

Hash & Hash, Phoenix, for appellee.

PHELPS, Justice (Retired).

This is an appeal from a judgment and decree granting an absolute divorce to appellee, Katherine Cross, from appellant, Benjamin S. Cross and denying to him an annulment. The decree also gave to appellee alimony, attorney's fees, and it distributed the asserted community property to the parties.

The prime issue, both in the court below and here, is the validity of the parties' marriage. Appellant asserts there was no valid marriage in the first instance, and therefore there can be no divorce of a non-existent union, but only a declaration annulling the attempt at marriage and no allowance for alimony, and attorney's fees or a distribution of property as community.

The circumstances of the courtship and marriage of these two people are practically

undisputed in the evidence. They met in 1953 and in May of 1954 they decided to marry. They were at this time both residents of the City of Phoenix, Arizona, and had been so for some time. Appellant was not married but appellee was then the wife of one Ruel Herbert Wheeler. This fact was known to both parties. Being thus apprised, they sought a divorce for appellee from Wheeler. They concluded they couldn't afford the cost of a divorce in Phoenix but were advised that they could obtain the divorce in Nogales, Old Mexico, for a fraction of the cost of a Phoenix divorce. Upon their arrival in Nogales, they were unable to make suitable arrangements and went to Juarez, Mexico, where they finally met with success. There they located a man, purportedly a Mexican attorney, who agreed to obtain a divorce for appellee for $50. Appellant furnished the money and in the space of one afternoon and the next morning a divorce was ostensibly obtained. Appellee and appellant then went into the State of New Mexico where they were married. There is no testimony that appellee ever went before a judge, although she did say she went to the court house that morning to pick up the papers. No decree of divorce was introduced in the court below.

It is patent that the activities outlined above, which are not disputed, could not have resulted in a severance of the bonds of marriage between appellee and Wheeler.

The Mexican Court, if indeed a court was ever involved, did not have the slightest semblance of jurisdiction to adjudicate the marital status of appellee and Wheeler and no serious contention is made to the contrary. We are compelled to hold that the purported divorce was a nullity, totally void and without any effect on the marital status of appellee and Wheeler.

 Thus, we are faced with the issue of whether appellant, because of his active participation in, and financing of the Mexican divorce, is estopped to assert its invalidity in a proceeding directly concerning the marital status of the parties. Clearly there is no estoppel here. Both parties were in pari delicto in procuring the Mexican divorce. Therefore appellee did not act to her damage in reliance upon anything appellant did. City of Glendale v. Coquat, 46 Ariz. 478, 52 P.2d 1178, 102 A.L.R. 837; Lillywhite v. Coleman, 46 Ariz. 523, 52 P.2d 1157; Insurance Company of North America v. Williams, 42 Ariz. 331, 26 P.2d 117. Nor is the conscience of the court repelled in the instant case because the conduct of both parties is equally repulsive. Both participating fully, both are equally guilty. This problem has been most recently considered by this Court in Unruh v. Industrial Commission, 81 Ariz. 118, 301 P.2d 1029. In that case we specifically reversed a finding that a spouse who had secured a patently invalid Mexican divorce was not the legal widow of the man whom she had supposedly

divorced by the Mexican proceedings. However, we also held that the court would not permit her to question the validity of the divorce for her own personal financial advantage on the grounds of quasi estoppel for the reason that the conscience of the court was repelled by the assertion of rights inconsistent with the wife's past conduct.

The rule of the Unruh decision is not applicable here where the proceeding is directly for the purpose of attacking the marital status, regardless of the participation of the parties in the acquisition of the divorce. Campbell v. Campbell, Sup., 62 N.Y.S.2d 245; Smith v. Smith, 72 Ohio App. 203, 50 N.E.2d 889; Christopher v. Christopher, 198 Ga. 361, 31 S.E.2d 818; Gruttemeyer v. Gruttemeyer, 285 App.Div. 1185, 141 N.Y.S.2d 227. cf. Green v. Green, 77 Ariz. 219, 269 P.2d 718. Otherwise under the facts of this case we would in effect give validity to a divorce where there was neither evidence given to support it nor a court convened to hear it and by so doing would validate a subsequent bigamous marriage of a participant therein.

■ Appellee further contends that appellant failed to overcome the very strong presumption of validity operating in favor of the subsequent marriage. See McCord v. McCord, 13 Ariz. 377, 114 P. 968; Kolombatovich v. Magma Copper Co., 43 Ariz. 314, 30 P.2d 832; Sanders v. Sanders, 52 Ariz. 156, 79 P.2d 523. This doctrine was not urged below, but we will consider any legal theory within the issues and supported by the evidence which tends to support and sustain the judgment of the trial court. Phelps Dodge Corp., Morenci Branch v. Industrial Commission, 90 Ariz. 379, 368 P.2d 450; Mountain States Const. Co. v. Riley, 88 Ariz. 335, 356 P.2d 648.

■ An examination of those decisions reveals that the presumption therein announced is not conclusive, nor does it place a burden upon the party attacking a marriage to prove beyond any possible doubt that the marriage was invalid. Here, *all* the proof strongly tends to rebut the presumption of a valid marriage. The evidence concerning Ruel Herbert Wheeler was that he was alive at the time of the purported divorce and subsequent marriage the same day. All the evidence shows that the parties relied on and intended the Mexican divorce to dissolve appellee's marriage to Wheeler so as to enable her to marry appellant. On these facts the presumption of validity is overcome. Any other result would be patent absurdity.

■ On the state of this record where there was no valid marriage of appellant to appellee, there can be no acquisition of property rights based on their marital status. In re Mortenson's Estate, 83 Ariz. 87, 316 P.2d 1106; See also Stevens v. Anderson, 75 Ariz. 331, 256 P.2d 712.

We do not imply, however, that appellee has no claim for labor and money contributed during the course of the purported marriage which enriched appellant. The evidence shows that appellee used her personal funds and labored to improve appellant's real property. Based on general principles of law and equity and without resort to the existence of the marital status she may recover the value of these contributions. The fact of a meretricious relationship does not bar appellee's claim for contribution of funds and labor performed in improving appellant's property during this relationship. Garza v. Fernandez, 74 Ariz. 312, 248 P.2d 869.

The judgment of the trial court is hereby reversed and the cause is remanded to the superior court with directions to enter a decree of annulment for the appellant on his "cross-complaint". The superior court is further directed to conduct an appropriate proceeding for the purpose of determining the amount contributed by appellee in funds and services which directly improved appellant's property. This amount should be offset by all sums previously paid to appellee by appellant, if any, under the former divorce decree as attorney's fees, alimony, and appellee's share of the nonexistent community, subject to the court's discretion under A.R.S. § 25–371.

Order case reversed and remanded with directions.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER, J., concur.

NOTE: The Honorable LORNA E. LOCKWOOD being disqualified, the Honorable M. T. PHELPS, Justice (Retired) was called to sit in her stead.

JENNINGS, Justice (dissenting).

I do not agree with the decision reached by the majority of the court in this case, for *quasi* estoppel is clearly applicable.

One who participates in the procurement of and accepts the benefits from a judicial order or decree is estopped to deny the validity thereof, although such person was not a technical party to the proceedings. United States v. Certain Parcels of Land, 149 F.Supp. 696 (N.D.Ohio 1957); State v. Elkins for use of Ireland, 84 Colo. 409, 270 P. 875 (1928). The rationale of the principle is that "the conscience of the court is repelled by the assertion of rights inconsistent with a litigant's past conduct." Unruh v. Industrial Commission, 81 Ariz. 118, 120, 301 P.2d 1029, 1031 (1956).

" 'The principle opposing such action is one of estoppel in the interest of a sound administration of the laws whereby the regularity or even validity of an act procured by one himself cannot be raised—not that the act is valid, for it may not be, and estoppel does not make valid the thing complained of but merely closes the mouth

of the complainant. * * * The principle is known as the doctrine of acquiesence, often referred to as quasi estoppel.'" Harlan v. Harlan, *infra,* 70 Cal.App.2d at 662, 161 P.2d at 493.

This rule has been applied to divorce decrees repeatedly. Based thereon, many courts have adopted the view that one who takes an active part in obtaining for another a divorce decree so that they might be married is estopped to deny the validity of such decree in an action to annul the subsequent marriage. Mussey v. Mussey, 251 Ala. 439, 37 So.2d 921 (1948); Harlan v. Harlan, 70 Cal.App.2d 657, 161 P.2d 490 (1945); Zirkalos v. Zirkalos, 326 Mich. 420, 40 N.W.2d 313 (1949); Judkins v. Judkins, 22 N.J.Super. 516, 92 A.2d 120 (1952).

In the instant case there is no doubt that appellant participated in the procurement of the purported divorce and accepted the benefit thereof by immediately marrying appellee. It is repugnant to the principles of equity, which are applicable in divorce proceedings, to permit the appellant to escape his obligation to support the appellee by this device. As it is persuasively stated in Harlan v. Harlan, supra, with reference to the husband's suit for annulment:

"Plaintiff, however, is not in a position to take advantage of the invalidity of the Mexican divorce decree which the defendant obtained from Mr. Karlsson.

The record is clear that plaintiff paid the attorney's fee and expenses for obtaining said divorce and that he had an active and dominant part in arranging for same and in seeing that it was carried through expeditiously. Plaintiff herein was not technically a party to the Mexican suit. But he certainly was interested in its outcome. He was anxious that defendant be in a position so that he could marry her. He would thereby extricate himself from the immoral and illegal relationship in which he had been living. He as much as any other, not excepting the defendant, was responsible for institution of the suit and obtaining the decree. His interest then was to procure the result which he now seeks to nullify, after having lived with defendant as husband and wife for over twelve years. That the sweet may have turned sour does not make it conscionable that the plaintiff should be allowed now to undo what his own hand and mind had so much to do in creating. Plaintiff is therefore not in a position to question the validity of defendant's divorce. This is on the principle of quasi estoppel 'which is based upon the principle that one cannot blow both hot and cold, or that one "with full knowledge of the facts shall not be permitted to act in a manner inconsistent with his former position or conduct to the injury of

another." * * * ' " 70 Cal.App.2d at 661–662, 161 P.2d at 493.

The majority attempt to justify their position on the dubious grounds that they refuse to give validity to a void divorce or to validate a subsequent bigamous marriage. This argument strikes wide of the mark. By refusing to permit the appellant to escape his obligations to the appellee, this Court does not recognize as valid a judgment of divorce which necessarily is assumed to be invalid, but merely prevents the appellant from avoiding the responsibility which he voluntarily incurred. Krause v. Krause, 282 N.Y. 355, 26 N.E. 2d 290 (1940). Nor is the marriage recognized as valid by reason of the estoppel. The Supreme Court of California met this argument squarely in Spellens v. Spellens, 49 Cal.2d 210, 317 P.2d 613 (1957), holding the theory to be that the estopped party by reason of his conduct will not be permitted to question the validity of the marriage; not that the marriage is found to be valid. The court therein unequivocally approved the policy of the Harlan case and quoted with approval that:

" 'To hold otherwise protects neither the welfare nor morals of society but, on the contrary, such holding is a flagrant invitation to others to attempt to circumvent the law, cohabit in unlawful state, and when tired of such situation, apply to the courts for a release

from the indicia of the marriage status.' " 49 Cal.2d at 219, 317 P.2d at 618.

The majority opinion also seeks to distinguish prior Arizona cases wherein this Court has applied *quasi* estoppel in divorce proceedings by making a distinction between cases in which the proceeding is directly for the purpose of attacking the marital status as opposed to actions in which the determination of property rights is the object of litigation. This is a shadowy distinction which may prove difficult in application, for in most cases of this type, as in Unruh v. Industrial Commission, supra, the ultimate determination of the issues depends, first, upon a determination of the marital status of one or more litigants. In Green v. Green, 77 Ariz. 219, 269 P.2d 718 (1954), the plaintiff sought to set aside a judgment of divorce on the grounds that the court had been without jurisdiction to render it. There could not be a clearer case in which the proceeding was directly for the purpose of attacking the marital status, and yet this Court held that the plaintiff was estopped to assert the invalidity of the divorce. The Court stated therein that:

"As applied to a divorce decree, the general rule is that if one's conduct has led to the obtaining of the decree, or if his conduct for any other reason has been such as would make it inequitable to allow him to deny the validity

of the decree, the courts will not listen to his pleas of invalidity. * * * Under such circumstances, equity closes the door and refuses to disturb the situation thus created." 77 Ariz. at 222, 269 P.2d at 720.

The decision rendered today is a clear departure from the principle of the Green case. The judgment should be affirmed.